# NATIONAL LABOR RELATIONS BOARD et al. v. SEARS, ROEBUCK & CO.

No. 73–1233. Argued January 14, 1975—Decided April 28, 1975

134

WHITE, J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, STEWART, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined. BURGER, C. J., concurred in the judgment. POWELL, J., took no part in the consideration or decision of the case.

*Deputy Solicitor General Friedman* argued the cause for petitioners. With him on the briefs were *Solicitor General Bork, Allan Abbot Tuttle, Peter G. Nash, John S. Irving, Patrick Hardin,* and *Norton J. Come.*

*Gerard C. Smetana* argued the cause for respondent. With him on the brief were *Lawrence M. Cohen, Jeffrey S. Goldman,* and *Alan Raywid.**

MR. JUSTICE WHITE delivered the opinion of the Court.

The National Labor Relations Board (the Board) and its General Counsel seek to set aside an order of the United States District Court directing disclosure to respondent, Sears, Roebuck & Co. (Sears), pursuant to

---

*Briefs of *amici curiae* urging affirmance were filed by *Milton Smith* and *Jerry Kronenberg* for the Chamber of Commerce of the United States; by *Carol A. Cowgill, Peter H. Schuck, Marvin M. Karpatkin,* and *Melvin L. Wulf* for the American Civil Liberties Union et al.; and by *Alan B. Morrison* for Freedom of Information Clearinghouse.

the Freedom of Information Act, 5 U. S. C. § 552
(Act), of certain memoranda, known as "Advice Memo-
randa" and "Appeals Memoranda," and related docu-
ments generated by the Office of the General Counsel in
the course of deciding whether or not to permit the filing
with the Board of unfair labor practice complaints.

The Act's background and its principal objectives are
described in *EPA* v. *Mink,* 410 U. S. 73, 79–80 (1973), and
will not be repeated here. It is sufficient to note for pres-
ent purposes that the Act seeks "to establish a general
philosophy of full agency disclosure unless information is
exempted under clearly delineated statutory language."
S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965) (herein-
after S. Rep. No. 813); *EPA* v. *Mink, supra,* at 80. As
the Act is structured, virtually every document generated
by an agency is available to the public in one form or
another, unless it falls within one of the Act's nine ex-
emptions. Certain documents described in 5 U. S. C.
§ 552 (a)(1) such as "rules of procedure" must be pub-
lished in the Federal Register; others, including "final
opinions . . . made in the adjudication of cases," "state-
ments of policy and interpretations which have been
adopted by the agency," and "instructions to staff that
affect a member of the public," described in 5 U. S. C.
§ 552 (a)(2),[1] must be indexed and made available to a

---

[1] Title 5 U. S. C. § 552 (a)(2) provides in part:

"Each agency, in accordance with published rules, shall make avail-
able for public inspection and copying—

"(A) final opinions, including concurring and dissenting opinions,
as well as orders, made in the adjudication of cases;

"(B) those statements of policy and interpretations which have
been adopted by the agency and are not published in the Federal
Register; and

"(C) administrative staff manuals and instructions to staff that
affect a member of the public;

"unless the materials are promptly published and copies offered for
sale. To the extent required to prevent a clearly unwarranted in-

member of the public on demand, H. R. Rep. No. 1497, 89th Cong., 2d Sess., 8 (1966) (hereinafter H. R. Rep. No. 1497). Finally, and more comprehensively, all "identifiable records" must be made available to a member of the public on demand. 5 U. S. C. § 552 (a)(3).[2] The Act expressly states, however, that the disclosure obligation "does not apply" to those documents described in the nine enumerated exempt categories listed in § 552 (b).[3]

Sears claims, and the courts below ruled, that the memoranda sought are expressions of legal and policy decisions already adopted by the agency and constitute "final opinions" and "instructions to staff that affect a member of the public," both categories being expressly disclos-

---

vasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction. . . ."

[2] Title 5 U. S. C. § 552 (a)(3) at the time in question provided in pertinent part:

"Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. . . ."

[3] The relevant exempt categories are those described in Exemptions 2, 5, and 7. With respect to them, the statute provides:

"This section does not apply to matters that are—

. . . . .

"(2) related solely to the internal personnel rules and practices of an agency;

. . . . .

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ;

. . . . .

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency . . . ."

able under § 552 (a)(2) of the Act, pursuant to its purposes to prevent the creation of "secret law." In any event, Sears claims, the memoranda are nonexempt "identifiable records" which must be disclosed under § 552 (a)(3). The General Counsel, on the other hand, claims that the memoranda sought here are not final opinions under § 552 (a)(2) and that even if they are "identifiable records" otherwise disclosable under § 552 (a)(3), they are exempt under § 552 (b), principally as "intra-agency" communications under § 552 (b)(5) (Exemption 5), made in the course of formulating agency decisions on legal and policy matters.

I

Crucial to the decision of this case is an understanding of the function of the documents in issue in the context of the administrative process which generated them. We deal with this matter first. Under § 1 *et seq.* of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U. S. C. § 151 *et seq.*, the process of adjudicating unfair labor practice cases begins with the filing by a private party of a "charge," §§ 3 (d) and 10 (b), 29 U. S. C. §§ 153 (d) and 160 (b); 29 CFR § 101.2 (1974); *Auto Workers* v. *Scofield,* 382 U. S. 205, 219 (1965); *NLRB* v. *Indiana & Michigan Electric Co.,* 318 U. S. 9, 17–18 (1943). Although Congress has designated the Board as the principal body which adjudicates the unfair labor practice case based on such charge, 29 U. S. C. § 160, the Board may adjudicate only upon the filing of a "complaint"; and Congress has delegated to the Office of General Counsel "on behalf of the Board" the unreviewable authority to determine whether a complaint shall be filed. 29 U. S. C. § 153 (d); *Vaca* v. *Sipes,* 386 U. S. 171, 182 (1967). In those cases in which he decides that a complaint shall issue, the General Counsel becomes an advo-

cate before the Board in support of the complaint. In those cases in which he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first persuading the Office of General Counsel that his claim is sufficiently meritorious to warrant Board consideration.

In order to structure the considerable power which the administrative scheme gives him, the General Counsel has adopted certain procedures for processing unfair labor practice charges. Charges are filed in the first instance with one of the Board's 31 Regional Directors,[4] to whom the General Counsel has delegated the initial power to decide whether or not to issue a complaint. 29 CFR §§ 101.8, 102.10. A member of the staff of the Regional Office then conducts an investigation of the charge, which may include interviewing witnesses and reviewing documents. 29 CFR § 101.4. If, on the basis of the investigation, the Regional Director believes the charge has merit, a settlement will be attempted, or a complaint issued. If the charge has no merit in the Regional Director's judgment, the charging party will be so informed by letter with a brief explanation of the reasons. 29 CFR §§ 101.6, 101.8, 102.15, 102.19. In such a case, the charging party will also be informed of his right to appeal within 10 days to the Office of the General Counsel in Washington, D. C. 29 CFR §§ 101.6, 102.19.

If the charging party exercises this right, the entire file in the possession of the Regional Director will be sent to

---

[4] All of the officers and employees in the Regional Offices are under the general supervision of the General Counsel. 29 U. S. C. § 153 (d); National Labor Relations Board, Organization and Functions, § 202.1.1 *et seq.*, 32 Fed. Reg. 9588–9589 (1967).

the Office of Appeals in the General Counsel's Office in Washington, D. C. The case will be assigned to a staff attorney in the Office of Appeals, who prepares a memorandum containing an analysis of the factual and legal issues in the case. This memorandum is called an "agenda minute"[5] and serves as the basis for discussion at a meeting of the "Appeals Committee," which includes the Director and Associate Director of the Office of Appeals. At some point in this period, the charging party may make a written presentation of his case as of right and an oral presentation in the discretion of the General Counsel. 29 CFR § 102.19. If an oral presentation is allowed, the subject of the unfair labor practice charge is notified and allowed a similar but separate opportunity to make an oral presentation. In any event, a decision is reached by the Appeals Committee; and the decision and the reasons for it are set forth in a memorandum called the "General Counsel's Minute" or the "Appeals Memorandum." This document is then cleared through the General Counsel himself. If the case is unusually complex or important, the General Counsel will have been brought into the process at an earlier stage and will have had a hand in the decision and the expression of its basis in the Appeals Memorandum. In either event, the Appeals Memorandum is then sent to the Regional Director who follows its instructions. If the appeal is rejected and the Regional Director's decision not to issue a complaint is sustained, a separate document is prepared and sent by the General Counsel in letter form to the charging party, more briefly setting forth the reasons for the denial of his appeal.[6] The Appeals Memo-

---

[5] This document is *not* sought by Sears.

[6] In April 1971, the General Counsel ceased preparing a separate Appeals Memorandum in every case, and ceased preparing one in any case in which the Regional Director's decision not to issue a complaint was sustained. In this latter class of cases, the General

randa, whether sustaining or overruling the Regional Directors, constitute one class of documents at issue in this case.

The appeals process affords the General Counsel's Office in Washington some opportunity to formulate a coherent policy; and to achieve some measure of uniformity, in enforcing the labor laws. The appeals process alone, however, is not wholly adequate for this purpose: when the Regional Director initially decides to file a complaint, no appeal is available; and when the Regional Director decides not to file a complaint, the charging party may neglect to appeal. Accordingly, to further "fair and uniform administration of the Act," [7] the General Counsel requires the Regional Directors, before reaching an initial decision in connection with charges raising certain issues specified by the General Counsel, to submit the matter to the General Counsel's "Advice Branch," also located in Washington, D. C. In yet other kinds of cases, the Regional Directors are permitted to seek the counsel of the Advice Branch.

When a Regional Director seeks "advice" from the Advice Branch, he does so through a memorandum which sets forth the facts of the case, a statement of the issues on which advice is sought, and a recommendation. The case is then assigned to a staff attorney in the Advice Branch who researches the legal issues presented by reading prior Board and court decisions and "prior advice determinations in similar or related cases," Statement 3076,[8] and reports, orally or in

---

Counsel adopted the policy of expanding the letter sent to the charging party and sending the Regional Director a copy of the letter.

[7] Statement submitted by the NLRB General Counsel to a House Labor Subcommittee on June 29, 1961 (hereinafter Statement), 1 CCH Lab. L. Rep. ¶ 1150, p. 3075 (1968).

[8] A subject-matter index to Advice—but not Appeals—Memoranda is maintained by the General Counsel.

writing, to a Committee or "agenda" made up of various high-ranking members of the General Counsel's Office. The Committee recommendation is then arrived at and communicated to the General Counsel, together with the recommendation of the Regional Director and any dissenting views in the Committee. In special cases, the General Counsel may schedule special agendas and invite other staff members to submit their recommendations. In either event, the General Counsel will decide the issue submitted, and his "final determination" will be communicated to the Regional Director by way of an Advice Memorandum. The memorandum will briefly summarize the facts, against the background of which the legal or policy issue is to be decided, set forth the General Counsel's answer to the legal or policy issue submitted together with a "detailed legal rationale," and contain "instructions for the final processing of the case." *Ibid.* Depending upon the conclusion reached in the memorandum, the Regional Director will either file a complaint or send a letter to the complaining party advising him of the Regional Director's decision not to proceed and informing him of his right to appeal. It is these Advice Memoranda which constitute the other class of documents of which Sears seeks disclosure in this case.

## II

This case arose in the following context. By letter dated July 14, 1971, Sears requested that the General Counsel disclose to it pursuant to the Act all Advice and Appeals Memoranda issued within the previous five years on the subjects of "the propriety of withdrawals by employers or unions from multi-employer bargaining, disputes as to commencement date of negotiations, or conflicting interpretations in any other context of the Board's

*Retail Associates* (120 NLRB 388) rule." [9] The letter also sought the subject-matter index or digest of Advice and Appeals Memoranda.[10] The letter urged disclosure on the theory that the Advice and Appeals Memoranda are the only source of agency "law" on some issues. By letter dated July 23, 1971, the General Counsel declined Sears' disclosure request in full. The letter stated that Advice Memoranda are simply "guides for a Regional Director" and are not final; that they are exempt from

---

[9] Sears later added a request for memoranda "dealing with the contract successorship doctrine of *Burns International Detective Agency* v. *NLRB* [then pending before this Court], as well as cases dealing with lockouts occurring in multi-employer bargaining situations."

[10] Sears was then in the process of preparing an appeal to the General Counsel in Washington from a refusal by the Regional Director to file a complaint with the Board in response to an unfair labor practice charge earlier filed by Sears with the Regional Director in Seattle, Wash. The refusal was based upon an Advice Memorandum and involved a judgment about the timeliness of the withdrawal by Sears from a multi-employer bargaining unit; the letter sent by the Regional Director to Sears to explain the refusal stated that Sears' withdrawal had been untimely. Sears' appeal—without the benefit of the documents sought—was ultimately successful, a complaint was filed with the Board, and hearings were scheduled to commence on the complaint on November 9, 1971. Proceedings before the Board were delayed for a time by a stay issued by the District Court, later reversed by the Court of Appeals, *Sears, Roebuck & Co.* v. *NLRB*, 153 U. S. App. D. C. 380, 473 F. 2d 91 (1973), cert. denied, 415 U. S. 950 (1974); and the complaint was eventually withdrawn upon withdrawal of the underlying charge.

Sears' rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the Advice and Appeals Memoranda greater than that shared by the average member of the public. The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants. *EPA* v. *Mink*, 410 U. S. 73, 79, 92 (1973); *Renegotiation Board* v. *Bannercraft Clothing Co.*, 415 U. S. 1, 24 (1974). Accordingly, we will not refer again to Sears' underlying unfair labor practice charge.

disclosure under 5 U. S. C. § 552 (b)(5) as "intra-agency memoranda" which reflect the thought processes of the General Counsel's staff; and that they are exempt pursuant to 5 U. S. C. § 552 (b)(7) as part of the "investigative process." The letter said that Appeals Memoranda were not indexed by subject matter and, therefore, the General Counsel was "unable" to comply with Sears' request. In further explanation of his decision, with respect to Appeals Memoranda, the General Counsel wrote to Sears on August 4, 1971, and stated that Appeals Memoranda which ordered the filing of a complaint were not "final opinions."[11] The letter further stated that those Appeals Memoranda which *were* "final opinions, i. e., those in which an appeal was denied" and which directed that no complaint be filed, numbered several thousand, and that in the General Counsel's view they had no precedential significance. Accordingly, if disclosable at all, they were disclosable under 5 U. S. C. § 552 (a)(3) relating to "identifiable records." The General Counsel then said that Sears had failed adequately to identify the material sought and that he could not justify the expenditure of time necessary for the agency to identify them.

On August 4, 1971, Sears filed a complaint pursuant to the Act seeking a declaration that the General Counsel's refusal to disclose the Advice and Appeals Memoranda and indices thereof requested by Sears violated the Act, and an injunction enjoining continued violations of the Act. On August 24, 1971, the current General Counsel took office. In order to give him time to develop his own disclosure policy, the filing of his answer was postponed until February 3, 1972. The answer denied that the Act

---

[11] The reference was apparently to the provisions of 5 U. S. C. § 552 (a)(2)(A) specifically providing for disclosure and indexing of final opinions.

required disclosure of any of the documents sought but referred to a letter of the same date in which the General Counsel informed Sears that he would make available the index to Advice Memoranda and also all Advice and Appeals Memoranda in cases which had been closed—either because litigation before the Board had been completed or because a decision not to file a complaint had become final. He stated, however, that he would not disclose the memoranda in open cases; that he would, in any event, delete names of witnesses and "security sensitive" matter from the memoranda he did disclose; and that he did not consider the General Counsel's Office bound to pursue this new policy "in all instances" in the future.

Not wholly satisfied with the voluntary disclosures offered and made by the General Counsel, Sears moved for summary judgment and the General Counsel did likewise. Sears thus continued to seek memoranda in open cases. Moreover, Sears objected to the deletions in the memoranda in closed cases and asserted that many Appeals Memoranda were unintelligible because they incorporated by reference documents which were not themselves disclosed and also referred to "the 'circumstances of the case'" which were not set out and about which Sears was ignorant. The General Counsel contended that all of the documents were exempt from disclosure as "intra-agency" memoranda within the coverage of 5 U. S. C. § 552 (b)(5); and that the documents incorporated by reference were exempt from disclosure as "investigatory files" pursuant to 5 U. S. C. § 552 (b)(7). The parties also did not agree as to the function of an Advice Memorandum. Sears claimed that Advice Memoranda are binding on Regional Directors. The General Counsel claimed that they are not, noting the fact that the Regional Director himself has the delegated power to issue a complaint.

The District Court granted Sears' motion for summary judgment and denied that of the General Counsel. The court found that, although the General Counsel had delegated to the Regional Directors the power to file complaints, an Advice Memorandum constituted a *pro tanto* withdrawal of the delegation of that power. Accordingly, Advice Memoranda were held to constitute "instructions to staff that affect a member of the public," which are expressly disclosable pursuant to 5 U. S. C. § 552 (a)(2)(C). Appeals Memoranda were held to be "final opinions." Both were held not to be "intra-agency memorandums" protected by 5 U. S. C. § 552 (b)(5), since they were not expressions "of a point of view" but the "disposition of a charge." Documents incorporated by reference in the memoranda were held to have lost whatever exempt status they had previously. See *American Mail Line, Ltd.* v. *Gulick,* 133 U. S. App. D. C. 382, 389, 411 F. 2d 696, 703 (1969). The court then concluded that the case was a proper one for exercise of its injunctive powers under the Act, even though the General Counsel had voluntarily disclosed some of the material sought. The court noted that it had jurisdiction to enjoin the withholding of documents prospectively, in addition to ordering the production of documents already withheld. It referred to the fact that the General Counsel's Office had a longstanding policy of nondisclosure and that it still maintained that the policy was lawful and that the current one of partial disclosure could be changed, and it referred to the fact that disputes had arisen about the deletions in the documents which had been disclosed voluntarily. Accordingly, the court ordered that the General Counsel (1) make available to the public all Appeals and Advice Memoranda issued since July 4,

1967,[12] and any document expressly incorporated by reference (without apparently limiting the order to memoranda on the subject matter requested by Sears);[13] (2) produce, and compile if necessary, indices of the memoranda; (3) produce explanatory material, including existing documents, in those instances in which a memorandum refers to the "circumstances of the case"; and (4) cease deleting names, citations, or matter other than settlement suggestions, from the memoranda without written justification.[14] This decision was affirmed without opinion by the Court of Appeals for the District of Columbia Circuit on the basis of its decision in *Grumman Aircraft Engineering Corp.* v. *Renegotiation Board,* 157 U. S. App. D. C. 121, 482 F. 2d 710 (1973), rev'd, *post,* p. 168, and we granted certiorari, 417 U. S. 907 (1974), in both cases and set them for argument together to consider the important questions of the construction of the Act as they relate to documents generated by agency decisionmaking processes.

### III

It is clear, and the General Counsel concedes, that Appeals and Advice Memoranda are at the least "identifiable records" which must be disclosed on demand, unless they fall within one of the Act's exempt categories.[15] It is also clear that, if the memoranda do fall within one of the Act's exempt categories, our inquiry is

---

[12] The effective date of the Act.

[13] The parties make no issue of the breadth of this order and we assume that it was intended to apply only to the Appeals and Advice Memoranda dealing with the subject matter described in Sears' complaint.

[14] See 5 U. S. C. § 552 (a) (2).

[15] The General Counsel has abandoned the contrary contention which his predecessor made in connection with Appeals Memoranda in his August 4 letter to Sears.

148

at an end, for the Act "does not apply" to such documents. Thus our inquiry, strictly speaking, must be into the scope of the exemptions which the General Counsel claims to be applicable—principally Exemption 5 relating to "intra-agency memorandums." The General Counsel also concedes, however, and we hold for the reasons set forth below, that Exemption 5 does not apply to any document which falls within the meaning of the phrase "final opinion . . . made in the adjudication of cases." 5 U. S. C. § 552 (a)(2)(A). The General Counsel argues, therefore, as he must, that no Advice or Appeals Memorandum is a final opinion made in the adjudication of a case and that all are "intra-agency" memoranda within the coverage of Exemption 5. He bases this argument in large measure on what he claims to be his lack of adjudicative authority. It is true that the General Counsel lacks any authority finally to adjudicate an unfair labor practice claim in favor of the claimant; but he does possess the authority to adjudicate such a claim against the claimant through his power to decline to file a complaint with the Board. We hold for reasons more fully set forth below that those Advice and Appeals Memoranda which explain decisions by the General Counsel not to file a complaint are "final opinions" made in the adjudication of a case and fall outside the scope of Exemption 5; but that those Advice and Appeals Memoranda which explain decisions by the General Counsel to file a complaint and commence litigation before the Board are not "final opinions" made in the adjudication of a case and do fall within the scope of Exemption 5.

A

The parties are in apparent agreement that Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency. *EPA* v. *Mink,* 410 U. S., at 85–86. Since

virtually any document not privileged may be discovered by the appropriate litigant, if it is relevant to his litigation, and since the Act clearly intended to give any member of the public as much right to disclosure as one with a special interest therein, *id.*, at 79, 92; *Sterling Drug, Inc.* v. *FTC*, 146 U. S. App. D. C. 237, 243, 244, 450 F. 2d 698, 704, 705 (1971); S. Rep. No. 813, p. 5; H. R. Rep. No. 1497, p. 1, it is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context.[16] The privileges claimed by petitioners to be relevant to this case are (i) the "generally . . . recognized" privilege for "confidential intra-agency advisory opinions . . . ," *Kaiser Aluminum & Chemical Corp.* v. *United States*, 141 Ct. Cl. 38, 49, 157 F. Supp. 939, 946 (1958) (Reed, J.), disclosure of which "would be 'injurious to the consultative functions of government . . . .' *Kaiser Aluminum & Chemical Corp., supra*, at 49, 157 F. Supp., at 946," *EPA* v. *Mink, supra*, at 86–87 (sometimes referred to as "executive privilege"), and (ii) the attorney-client and attorney work-product privileges generally available to all litigants.

---

[16] The ability of a private litigant to override a privilege claim set up by the Government, with respect to an otherwise disclosable document, may itself turn on the extent of the litigant's need in the context of the facts of his particular case; or on the nature of the case. *EPA* v. *Mink*, 410 U. S., at 86 n. 13; *Hickman* v. *Taylor*, 329 U. S. 495, 511–512 (1947); *Jencks* v. *United States*, 353 U. S. 657 (1957); *United States* v. *Nixon*, 418 U. S. 683 (1974). However, it is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling. Indeed, the House Report says that Exemption 5 was intended to permit disclosure of those intra-agency memoranda which would "routinely be disclosed" in private litigation, H. R. Rep. No. 1497, p. 10, and we accept this as the law. *Sterling Drug, Inc.* v. *FTC*, 146 U. S. App. D. C. 237, 243–244, 450 F. 2d 698, 704–705 (1971).

150 

### (i)

That Congress had the Government's executive privilege specifically in mind in adopting Exemption 5 is clear, S. Rep. No. 813, p. 9; H. R. Rep. No. 1497, p. 10; *EPA* v. *Mink, supra,* at 86. The precise contours of the privilege in the context of this case are less clear, but may be gleaned from expressions of legislative purpose and the prior case law. The cases uniformly rest the privilege on the policy of protecting the "decision making processes of government agencies," *Tennessean Newspapers, Inc.* v. *FHA,* 464 F. 2d 657, 660 (CA6 1972); *Carl Zeiss Stiftung* v. *V. E. B. Carl Zeiss, Jena,* 40 F. R. D. 318 (DC 1966); see also *EPA* v. *Mink, supra,* at 86–87; *International Paper Co.* v. *FPC,* 438 F. 2d 1349, 1358–1359 (CA2 1971); *Kaiser Aluminum & Chemical Corp.* v. *United States, supra,* at 49, 157 F. Supp., at 946; and focus on documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung* v. *V. E. B. Carl Zeiss, Jena, supra,* at 324. The point, plainly made in the Senate Report, is that the "frank discussion of legal or policy matters" in writing might be inhibited if the discussion were made public; and that the "decisions" and "policies formulated" would be the poorer as a result. S. Rep. No. 813, p. 9. See also H. R. Rep. No. 1497, p. 10; *EPA* v. *Mink, supra,* at 87. As a lower court has pointed out, "there are enough incentives as it is for playing it safe and listing with the wind," *Ackerly* v. *Ley,* 137 U. S. App. D. C. 133, 138, 420 F. 2d 1336, 1341 (1969), and as we have said in an analogous context, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the

*detriment of the decisionmaking process." United States v. Nixon,* 418 U. S. 683, 705 (1974) (emphasis added).[17]

Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed. Accordingly, the lower courts have uniformly drawn a distinction between predecisional communications, which are privileged,[18] *e. g., Boeing Airplane Co.* v. *Coggeshall,* 108 U. S. App. D. C. 106, 280 F. 2d 654 (1960); *O'Keefe* v. *Boeing Co.,* 38 F. R. D. 329 (SDNY 1965); *Walled Lake Door Co.* v. *United States,* 31 F. R. D. 258 (ED Mich. 1962); *Zacher* v. *United States,* 227 F. 2d 219, 226 (CA8 1955), cert. denied, 350 U. S. 993 (1956); *Clark* v. *Pear-*

---

[17] Our remarks in *United States* v. *Nixon* were made in the context of a claim of "executive privilege" resting solely on the Constitution of the United States. No such claim is made here and we do not mean to intimate that any documents involved here are protected by whatever constitutional content the doctrine of executive privilege might have.

[18] Our emphasis on the need to protect pre-*decisional* documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*son,* 238 F. Supp. 495, 496 (DC 1965); and communications made after the decision and designed to explain it, which are not.[19] *Sterling Drug, Inc.* v. *FTC,* 146 U. S. App. D. C. 237, 450 F. 2d 698 (1971); *GSA* v. *Benson,* 415 F. 2d 878, 881 (CA9 1969); *Bannercraft Clothing Co.* v. *Renegotiation. Board,* 151 U. S. App. D. C. 174, 466 F. 2d 345 (1972), rev'd on other grounds, 415 U. S. 1 (1974); *Tennessean Newspapers, Inc.* v. *FHA, supra.* See also S. Rep. No. 1219, 88th Cong., 2d Sess., 7 and 11.[20] This distinction is supported not only by the lesser injury to the decisionmaking process flowing from disclosure of postdecisional communications, but also, in the case of those communications which explain the decision, by the increased public interest in knowing the basis for agency policy already adopted. The public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground. In contrast, the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed

[19] We are aware that the line between predecisional documents and postdecisional documents may not always be a bright one. Indeed, even the prototype of the postdecisional document—the "final opinion"—serves the dual function of explaining the decision just made and providing guides for decisions of similar or analogous cases arising in the future. In its latter function, the opinion is predecisional; and the manner in which it is written may, therefore, affect decisions in later cases. For present purposes it is sufficient to note that final opinions are *primarily* postdecisional—looking back on and explaining, as they do, a decision already reached or a policy already adopted—and that their disclosure poses a negligible risk of denying to agency decisionmakers the uninhibited advice which is so important to agency decisions.

[20] This report was prepared in connection with a Senate bill identical to the one which led to the Act, which was eventually passed by the 89th Congress.

within the agency, constitute the "working law" of the agency and have been held by the lower courts to be outside the protection of Exemption 5. *Bannercraft Clothing Co.* v. *Renegotiation Board,* 151 U. S. App. D. C., at 181, 466 F. 2d, at 352; *Cuneo* v. *Schlesinger,* 157 U. S. App. D. C. 368, 484 F. 2d 1086 (1973), cert. denied *sub nom. Rosen* v. *Vaughn,* 415 U. S. 977 (1974); *Ash Grove Cement Co.* v. *FTC,* 371 F. Supp. 370 (1973), aff'd in part and rev'd in part, 167 U. S. App. D. C. 249, 511 F. 2d 815 (1975). Exemption 5, properly construed, calls for "disclosure of all 'opinions and interpretations' which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L. Rev. 761, 797 (1967); Note, Freedom of Information Act and the Exemption for Intra-Agency Memoranda, 86 Harv. L. Rev. 1047 (1973).

This conclusion is powerfully supported by the other provisions of the Act. The affirmative portion of the Act, expressly requiring indexing of "final opinions," "statements of policy and interpretations which have been adopted by the agency," and "instructions to staff that affect a member of the public," 5 U. S. C. § 552 (a)(2), represents a strong congressional aversion to "secret [agency] law," Davis, *supra,* at 797; and represents an affirmative congressional purpose to require disclosure of documents which have "the force and effect of law." H. R. Rep. No. 1497, p. 7. We should be reluctant, therefore, to construe Exemption 5 to apply to the documents described in 5 U. S. C. § 552 (a)(2); and with respect at least to "final opinions," which not only invariably explain agency action already taken or an agency decision already made, but also constitute "final disposi-

tions" of matters by an agency, see *infra*, at 158–159, we hold that Exemption 5 can never apply.[21]

### (ii)

It is equally clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 and that such a privilege had been recognized in the civil discovery context by the prior case law. The Senate Report states that Exemption 5 "would include the working papers of the agency attorney and documents which would come within the attorney-client privilege if applied to private parties," S. Rep. No. 813, p. 2; and the case law clearly makes the attorney's work-product rule of *Hickman* v. *Taylor*, 329 U. S. 495 (1947), applicable to Government attorneys in litigation. *Kaiser Aluminum & Chemical Corp.* v. *United States*, 141 Ct. Cl., at 50, 157 F. Supp, at 947; *United States* v. *Anderson*, 34 F. R. D. 518 (Colo. 1963); *Thill Securities Corp.* v. *New York Stock Exchange*, 57 F. R. D. 133 (ED Wis. 1972); *J. H. Rutter Rex Mfg. Co., Inc.* v. *NLRB*, 473 F. 2d 223 (CA5), cert. denied, 414 U. S. 822 (1973). Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy. *In re Natta*, 410 F. 2d 187 (CA3), cert. denied *sub nom. Montecatini Edison* v. *E. I. du Pont de Nemours & Co.*, 396 U. S. 836 (1969); *State ex rel. Dudek* v. *Circuit Court for Mil-*

---

[21] See Note, 86 Harv. L. Rev. 1047 (1973). Technically, of course, if a document could be, for example, both a "final opinion" and an intra-agency memorandum within Exemption 5, it would be non-disclosable, since the Act "does not apply" to documents falling within any of the exemptions.

*waukee County,* 34 Wis. 2d 559, 150 N. W. 2d 387 (1967);
*Hickman* v. *Taylor, supra,* at 510–511.

## B

Applying these principles to the memoranda sought
by Sears, it becomes clear that Exemption 5 does not
apply to those Appeals and Advice Memoranda which
conclude that no complaint should be filed and which
have the effect of finally denying relief to the charging
party; but that Exemption 5 does protect from disclosure
those Appeals and Advice Memoranda which direct the
filing of a complaint and the commencement of litigation
before the Board.

### (i)

Under the procedures employed by the General Coun-
sel, Advice and Appeals Memoranda are communicated
to the Regional Director *after* the General Counsel,
through his Advice and Appeals Branches, has decided
whether or not to issue a complaint; and represent an
explanation to the Regional Director of a legal or policy
decision already adopted by the General Counsel. In
the case of decisions *not* to file a complaint, the memo-
randa effect as "final" a "disposition," see discussion,
*infra,* at 158–159, as an administrative decision can—rep-
resenting, as it does, an unreviewable rejection of the
charge filed by the private party. *Vaca* v. *Sipes,* 386
U. S. 171 (1967). Disclosure of these memoranda would
not intrude on predecisional processes, and protecting
them would not improve the quality of agency decisions,
since when the memoranda are communicated to the
Regional Director, the General Counsel has already
reached his decision and the Regional Director who re-
ceives them has no decision to make—he is bound to
dismiss the charge. Moreover, the General Counsel's
decisions not to file complaints together with the Advice

and Appeals Memoranda explaining them, are precisely the kind of agency law in which the public is so vitally interested and which Congress sought to prevent the agency from keeping secret.[22] The Committee on Practice and Procedure of the American Bar Association's Section of Labor Relations Law (ABA Committee) has said in its 1970 report:

"Where the Advice Branch directs the Regional Director to issue a complaint, or where a Regional Director's dismissal is reversed on appeal and a complaint is subsequently issued, the subject matter, theory, and interpretation will ultimately be ventilated through the course of hearing, Trial Examiner and Board decisions, and perhaps review and adjudication in the courts. It is in all the remaining cases,

[22] The General Counsel argues that he makes no law, analogizing his authority to decide whether or not to file a complaint to a public prosecutor's authority to decide whether a criminal case should be brought, and claims that he does not adjudicate anything resembling a civil dispute. Without deciding whether a public prosecutor makes "law" when he decides not to prosecute or whether memoranda explaining such decisions are "final opinions," see *infra,* at 158, and n. 25, it is sufficient to note that the General Counsel's analogy is far from perfect. The General Counsel, unlike most prosecutors, may authorize the filing of a complaint with the Board only if a private citizen files a "charge." 29 U. S. C. §§ 153 (d) and 160 (b); *Auto Workers* v. *Scofield,* 382 U. S. 205, 219 (1965); *NLRB* v. *Indiana & Michigan Electric Co.,* 318 U. S. 9, 18 (1943). Unlike the victim of a crime, the charging party will, if a complaint is filed by the General Counsel, become a party to the unfair labor practice proceeding before the Board. 29 CFR § 102.8; *Auto Workers* v. *Scofield, supra,* at 219. And, if an unfair labor practice is found to exist, the ensuing cease-and-desist order will, unlike the punishment of the defendant in a criminal case, coerce conduct by the wrongdoer flowing particularly to the benefit of the charging party. For these reasons, we have declined to characterize the enforcement of the laws against unfair labor practices either as a wholly public or wholly private matter. *Id.,* at 218–219.

however, where the General Counsel either through the Advice Branch or through the Office of Appeals determines that issuance of complaint *is not warranted,* and that such determination constitutes final agency action of precedential import. . . . Your Committee believes that these 'precedents' constitute precisely the kinds of 'final opinions, statements of policy and interpretations' and 'instructions to staff that affect a member of the public,' which the Freedom of Information Act contemplates should be indexed and made available to the public." 2 ABA Labor Relations Law Section, p. 7 (1970).

The General Counsel contends, however, that the Appeals Memoranda represent only the first step in litigation and are not final; and that Advice Memoranda are advisory only and not binding on the Regional Director, who has the discretion to file or not to file a complaint. The contentions are without merit. Plainly, an Appeals Memorandum is the first step in litigation only when the appeal is sustained and it directs the filing of a complaint; [23] and the General Counsel's current characterization of an Advice Memorandum is at odds with his own description of the function of an Advice Memorandum in his statement to the House Committee. That statement says that the Advice Branch establishes *"uniform* policies" in those legal areas with respect to which Regional Directors are "required" to seek advice until a "definitive" policy is arrived at. This is so because if Regional Directors were "free" to interpret legal issues "the *law* could, as a practical matter and before Board decision of the issue, be one thing in one Region and conflicting in others." Statement 3075, 3076, 3077. (Em-

---

[23] The General Counsel himself in his letter to Sears of August 4, 1971, referred to the Appeals Memoranda "in which an appeal was denied" as "final opinions."

phasis added.) Therefore, the Advice Memorandum is created after consideration of "prior advice determinations in similar or related cases" and contains "instructions for the final processing of the case." *Id.*, at 3076. In light of this description, we cannot fault the District Court for concluding that the Advice Memorandum achieves a *pro tanto* withdrawal from the Regional Director of his discretion to file or not to file a complaint. Nor can we avoid the conclusion that Advice Memoranda directing dismissal of a charge represent the "law" of the agency. Accordingly, Advice and Appeals Memoranda directing that a charge be dismissed fall outside of Exemption 5 and must be disclosed.[24]

For essentially the same reasons, these memoranda are "final opinions" made in the "adjudication of cases" which must be indexed pursuant to 5 U. S. C. § 552 (a)(2)(A). The decision to dismiss a charge is a decision in a "case" and constitutes an "adjudication": an "adjudication" is defined under the Administrative Procedure Act, of which 5 U. S. C. § 552 is a part, as "agency process for the formulation of an order," 5 U. S. C. § 551 (7); an "order" is defined as "the whole or a part of a *final disposition*, whether affirmative [or] negative . . . of an agency in a matter . . . ," 5 U. S. C. § 551 (6) (emphasis added); and the dismissal of a charge, as noted above, is a "final disposition." [25] Since an Advice or Appeals Memoran-

---

[24] *Davis* v. *Braswell Motor Freight Lines, Inc.*, 363 F. 2d 600 (CA5 1966), relied on heavily by the General Counsel, is not to the contrary. In that case, Advice Memoranda were held to be privileged in the civil discovery context. However, a reading of the case discloses that the Advice Memoranda there involved had been issued in cases that later came before the Board, and it may therefore be inferred that these memoranda did not direct dismissal of the charge, but directed the filing of a complaint.

[25] We note that the possibility that the decision reached in an Advice Memorandum may be overturned in an Appeals Memorandum, as happened in the case involving Sears, discussed in n. 10, *supra*,

dum explains the reasons for the "final disposition" it plainly qualifies as an "opinion"; and falls within 5 U. S. C. § 552 (a)(2)(A). This conclusion is consistent with our recent holding in *ITT* v. *Electrical Workers*, 419 U. S. 428 (1975), that Board decisions in proceedings under 29 U. S. C. § 160 (k) (§ 10 (k) proceedings) are not "final dispositions." The decision in the § 10 (k) proceeding in that case did not finally decide anything and is more analogous to a decision by the General Counsel that an unfair labor practice complaint *should* be filed. See *infra,* this page and 160.

### (ii)

Advice and Appeals Memoranda which direct the filing of a complaint, on the other hand, fall within the coverage of Exemption 5. The filing of a complaint does not finally dispose even of the General Counsel's responsibility with respect to the case. The case will be litigated before and decided by the Board; and the General Counsel will have the responsibility of advocating the position of the charging party before the Board. The Memoranda will inexorably contain the General Counsel's theory of

does not affect its finality for our purposes. The decision reached in the Advice Memorandum, in the absence of an appeal filed by the charging party, has real operative effect, as much as does every order issued by a United States district court which might, if appealed, be overturned by a United States court of appeals. (Indeed, since the General Counsel is ultimately responsible for both the Advice and the Appeals Memoranda, an appeal in a case in which an Advice Memorandum is prepared is more like a petition for rehearing than it is like a normal appeal and the probability that the result will change is slim.) The Advice Memorandum is therefore unlike both the advisory opinion involved in *ITT* v. *Electrical Workers,* 419 U. S. 428 (1975), and the Regional Board Reports—which can have no operative effect at all until reviewed by the Statutory Board—in the companion case of *Renegotiation Board* v. *Grumman Aircraft, post,* p. 168.

the case and may communicate to the Regional Director some litigation strategy or settlement advice. Since the Memoranda will also have been prepared in contemplation of the upcoming litigation, they fall squarely within Exemption 5's protection of an attorney's work product. At the same time, the public's interest in disclosure is substantially reduced by the fact, as pointed out by the ABA Committee, see *supra,* at 156, that the basis for the General Counsel's legal decision will come out in the course of litigation before the Board; and that the "law" with respect to these cases will ultimately be made not by the General Counsel but by the Board or the courts.

We recognize that an Advice or Appeals Memorandum directing the filing of a complaint—although representing only a decision that a legal issue is sufficiently in doubt to warrant determination by another body—has many of the characteristics of the documents described in 5 U. S. C. § 552 (a)(2). Although not a "final opinion" in the "adjudication" of a "case" because it does not effect a "final disposition," the memorandum does explain a decision already reached by the General Counsel which has real operative effect—it permits litigation before the Board; and we have indicated a reluctance to construe Exemption 5 to protect such documents. *Supra,* at 153. We do so in this case only because the decisionmaker—the General Counsel—must become a litigating party to the case with respect to which he has made his decision. The attorney's work-product policies which Congress clearly incorporated into Exemption 5 thus come into play and lead us to hold that the Advice and Appeals Memoranda directing the filing of a complaint are exempt whether or not they are, as the District Court held, "instructions to staff that affect a member of the public." [26]

---

[26] It is unnecessary, therefore, to decide whether petitioners are correct in asserting that, properly construed, "instructions to staff"

## C

Petitioners assert that the District Court erred in holding that documents incorporated by reference in non-exempt Advice and Appeals Memoranda lose any exemption they might previously have held as "intra-agency" memoranda.[27] We disagree.

The probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice, *if adopted,* will become public is slight. First, when adopted, the reasoning becomes that of the agency and becomes *its* responsibility to defend. Second, agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted by an agency supports the District Court's decision below. Thus, we hold that, if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5.

Petitioners also assert that the District Court's order erroneously requires it to produce or create explanatory material in those instances in which an Appeals Memorandum refers to the "circumstances of the case." We agree. The Act does not compel agencies to write

---

do not in any event include documents prepared in furtherance of the "prosecution" of a specific case.

[27] It should be noted that the documents incorporated by reference are in the main factual documents which are probably not entitled to Exemption 5 treatment in the first place. *EPA* v. *Mink,* 410 U. S., at 87–93.

opinions in cases in which they would not otherwise be required to do so. It only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create. *Sterling Drug, Inc.* v. *FTC*, 146 U. S. App. D. C. 237, 450 F. 2d 698 (1971). Thus, insofar as the order of the court below requires the agency to create explanatory material, it is baseless. Nor is the agency required to identify, after the fact, those pre-existing documents which contain the "circumstances of the case" to which the opinion may have referred, and which are not identified by the party seeking disclosure.

IV

Finally, petitioners argue that the Advice and Appeals Memoranda are exempt, pursuant to 5 U. S. C. §§ 552 (b)(2) and (7) (Exemptions 2 and 7), and that the documents incorporated therein are protected by Exemption 7. With respect to the Advice and Appeals Memoranda, we decline to reach a decision on these claims for the reasons set forth below, and with respect to the documents incorporated therein, we remand for further proceedings.

A

Exemption 7 provided, at the time of Sears' request for documents and at the time of the decisions of the courts below, that the Act does not apply to "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." Noting support in the legislative history for the proposition that this exemption applies to the civil "enforcement" of the labor laws, H. R. Rep. No. 1497, p. 11, the General Counsel asserts that the "documentation underlying advice and appeals memoranda are 'investigatory files'" and that he "believes" the memoranda are themselves simi-

larly exempt in light of the "purposes"[28] of Exemption 7. The General Counsel also cites several lower court decisions[29] for the proposition that once a certain *type* of document is determined to fall into the category of "investigatory files" the courts are not to inquire whether the disclosure of the *particular* document in question would contravene any of the purposes of Exemption 7.

Two factors combine to convince us that we should not reach the claim that Advice and Appeals Memoranda are protected by Exemption 7. First, the General Counsel did not make this claim in the District Court; and although he did make it in the Court of Appeals, that court affirmed without opinion on the basis of its prior decision in another case not involving Exemption 7, and it is not clear whether the Court of Appeals passed on the claim. Thus, not only are we unenlightened on the question whether Advice and Appeals Memoranda, as factual matter, contain information the disclosure of which would offend the purposes of Exemption 7, but we are

---

[28] The "purposes" would appear to be "to prevent the premature disclosure of the results of an investigation so that the Government can present its strongest case in court, and to keep confidential the procedures by which the agency conducted its investigation and by which it has obtained information." *Frankel v. SEC*, 460 F. 2d 813, 817 (CA2), cert. denied, 409 U. S. 889 (1972). The first purpose is plainly inapplicable to cases in which the General Counsel has declined to commence a case; and the General Counsel never tells us whether its "procedures" or its "information" sources are revealed in Advice or Appeals Memoranda.

[29] *Weisberg v. Department of Justice*, 160 U. S. App. D. C. 71, 78–79, 489 F. 2d 1195, 1202–1203 (1973) (en banc), cert. denied, 416 U. S. 993 (1974). Accord: *Center for National Policy Review v. Weinberger*, 163 U. S. App. D. C. 368, 502 F. 2d 370 (1974); *Rural Housing Alliance v. Department of Agriculture*, 162 U. S. App. D. C. 122, 498 F. 2d 73 (1974); *Ditlow v. Brinegar*, 161 U. S. App. D. C. 154, 155, 494 F. 2d 1073, 1074, cert. denied, 419 U. S. 974 (1974); *Aspin v. Department of Defense*, 160 U. S. App. D. C. 231, 237, 491 F. 2d 24, 30 (1973).

without a lower court opinion on the legal issue. Under such circumstances, we normally decline to consider a legal claim, *Ramsey* v. *Mine Workers,* 401 U. S. 302 (1971); *Adickes* v. *S. H. Kress & Co.,* 398 U. S. 144 (1970), and we adhere to that policy in this case.

Second, Congress has amended Exemption 7 since petitioners filed their brief in this case. It now applies to

> "(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel." Pub. L. 93–502, 88 Stat. 1563.

The legislative history clearly indicates that Congress disapproves of those cases, relied on by the General Counsel, see n. 29, *supra,* which relieve the Government of the obligation to show that disclosure of a particular investigatory file would contravene the purposes of Exemption 7. S. Conf. Rep. No. 93–1200 (1974). The language of the amended Exemption 7 and the legislative history underlying it clearly reveal a congressional intent to limit application of Exemption 7 to agency records so that it would apply only to the extent that "the production of such records would interfere with enforcement proceedings, deprive a person of a right to a fair trial or

an impartial adjudication, constitute [an] . . . unwarranted invasion of personal privacy, disclose the identity of an informer, or disclose investigative techniques and procedures." *Id.*, at 12.

Any decision of the Exemption 7 issue in this case would have to be under the Act, as amended, *Fusari* v. *Steinberg*, 419 U. S. 379, 387 (1975), and, apart from the General Counsel's failure to raise the issue, the lower courts have had no opportunity to pass on the applicability of the Act, as amended, to Advice and Appeals Memoranda, since the amendment occurred after the decision by the Court of Appeals.[30]

## B

The General Counsel's claim that Advice and Appeals Memoranda are documents "related solely to the internal personnel rules and practices of an agency" and therefore protected by Exemption 2 was raised neither in the District Court nor in the Court of Appeals and we decline to reach it for the reasons set forth above.

## C

Finally, the General Counsel claims that the documents, incorporated by reference in Advice and Appeals Memoranda, which were previously protected by Exemption 7, should not lose their exempt status by reason of

---

[30] Since the General Counsel failed in the District Court to assert a claim under the version of Exemption 7 which was, if anything, more favorable to his position than the current version, the Court of Appeals on remand should determine whether petitioners are foreclosed from further pursuing the issue. We note in addition, however, that a court of equity may always amend its decree on a proper showing, and the District Court may wish to do so, if the General Counsel demonstrates an injury to his functions of the type sought to be prevented in Exemption 7, resulting from the disclosure of a particular Advice or Appeals Memorandum.

incorporation. Contrary to the District Court, we think the argument is sound. The reasons underlying Congress' decision to protect "investigatory files," both in the original Act and in the amendments, are as applicable to a document referred to in an Advice or Appeals Memorandum as they are to a document which is not. Therefore, a document protected by Exemption 7 does not become disclosable solely because it is referred to in a "final opinion." We are aware that the result of this holding will be that some "final opinions" will not be as easily understood as they would otherwise be. However, as noted above, the Act does not give the public a right to intelligible opinions in all cases. It simply gives the public a right to those "final opinions," which an agency chooses to write, and to which the Act applies. Congress has said that the Act "does not apply" to certain investigatory files. The case must accordingly be remanded to the District Court for a determination whether the documents incorporated by reference in the disclosable Advice and Appeals Memoranda are protected by Exemption 7, as amended.

In summary, with respect to Advice and Appeals Memoranda which conclude that a complaint should not be filed, we affirm the judgment of the Court of Appeals subject to its decision on remand whether the Government is foreclosed from pursuing its Exemption 7 claim. With respect to documents specifically incorporated therein, we remand for a determination whether these documents are protected by Exemption 7, as amended. Insofar as the judgment of the Court of Appeals requires the General Counsel to supply documents not expressly incorporated by reference in these Advice and Appeals Memoranda, or otherwise to explain the circumstances of the case, it is reversed; and with respect to Advice and Appeals Memoranda which conclude that a complaint

should be filed, the judgment of the Court of Appeals is likewise reversed.

*So ordered.*

The CHIEF JUSTICE concurs in the judgment.

MR. JUSTICE POWELL took no part in the consideration or decision of this case.