**CHURCH OF SCIENTOLOGY OF CALIFORNIA, Plaintiff,**

v.

**William E. SIMON et al., Defendants.**

**Civ. A. No. 76–1719.**

United States District Court, District of Columbia.

July 15, 1977.

Samuel H. Seymour, Robert A. Seefried, Walter G. Birkel, Jr., Washington, D. C., for plaintiff.

Carol Buehrens, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

In this Freedom of Information Act case, the Church of Scientology of California seeks from the Treasury Department's Office of the Assistant Secretary for Enforcement, Operations, and Tariff Claims (EOTA), Office of General Counsel, and the U.S. Secret Service records in their possession pertaining to the Church, its founder L. Ron Hubbard, and the subject of scientology in general. Defendants are the U.S. Treasury, the U.S. Secret Service, the Secretary of the Treasury, and the Director of Secret Service. The matter comes before the Court on defendants' Motion for Summary Judgment and plaintiff's Motion to Compel.

Plaintiff's initial request for records was made to the Treasury Department and its component agencies on December 19, 1974. By the time the complaint instituting this action was filed, one hundred forty-five documents had been identified to the request. Of these, ninety-six had been surrendered. The remaining forty-nine were being withheld under the aegis of Exemption 5 to the Act, 5 U.S.C. § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency". On April 19, 1977, plaintiff advised the government that "in the spirit of reasonableness and compromise" it was withdrawing its request to all but twenty of the documents. However, plaintiff noted that the Secret Service had acknowledged in its answers to interrogatories that it had not searched for the requested records through the Treasury Enforcement Communications System (TECS). Plaintiff asked that such a search be completed.[1] On May 13, the government turned over the complete text of ten of the twenty, and the partial text of three more.

Eight of the ten documents remaining in dispute are from EOTA. James Featherstone, Deputy Assistant Secretary for EOTA,[2] describes them as follows:

---

1. The Secret Service does not have terminal facilities allowing it direct access to TECS and is not a user of the system. Consequently, any request for records in the system should be directed to the Department of Customs, which administers TECS.

2. Referring to dictum in a 1952 Supreme Court decision that only the head of an agency may invoke executive privilege, plaintiff urges that Mr. Featherstone's affidavit is insufficient. See Reynolds v. United States, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1952). See also, Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C.1966), aff'd 128 U.S.App.D.C. 10, 384 F.2d 979, cert. denied, 389 U.S. 952, 88

S.Ct. 334, 19 L.Ed.2d 361 (1967). That language is not pertinent here. The courts have recognized several aspects to executive privilege. See, e. g., Reynolds v. United States, supra; Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Senate Select Committee on Presidential Campaign Activities v. Nixon, 162 U.S.App. D.C. 183, 498 F.2d 725 (D.C.Cir.1975); Ethyl Corporation v. Environmental Protection Agency, 478 F.2d 47 (4th Cir. 1973). In light of the many FOIA cases filed each year, court adherence to the Reynolds dictum in cases not dealing with the constitutional facet of the privilege would impose on agency heads a tremendous

"1. One page memorandum dated February 20, 1975, from the Office of the Assistant Secretary (EOTA) to the Chief of the U.S. National Central Bureau of Interpol. It is an intra-agency memorandum discussing and expressing opinions concerning Treasury appropriation hearings and Interpol and neither makes reference to nor discusses plaintiff.

"2. Two page memorandum dated January 15, 1975, from an EOTA official to the Assistant Secretary. It is an intra-agency memorandum discussing opinions and setting forth EOTA staff recommendations concerning a Church of Scientology Freedom of Information Act appeal to the Secret Service.

"3. One page memorandum dated February 10, 1975, from an EOTA official to the Assistant Secretary. It is an intra-agency memorandum containing advice and a recommendation regarding a Church of Scientology Freedom of Information Act appeal to the Secret Service.

"4. Two and one-half pages of undated intra-agency notes containing deliberative internal working papers of an EOTA attorney-official regarding possible advice and recommendations to the Interpol Washington National Central Bureau concerning a Church of Scientology Freedom of Information Act request.

"5. One and a quarter page memorandum dated October 1, 1974, from a staff officer of EOTA to the Chief, Interpol Washington National Central Bureau. It is an intra-agency memorandum consisting of advice and recommendations on possible courses of action and to defend that Office against disparagement.

"6. Two page memorandum dated April 23, 1974 from an attorney-staff officer of EOTA to the Chief, Interpol Washington National Central Bureau. The intra-agency memorandum consists of advice and recommendations on possible courses of action in internal policy and administrative matters.

"7. The majority of this document has been released. It is a three-page intra-agency memorandum dated December 13, 1973, concerning a telephone conversation with David A. Splitt, attorney for L. Ron Hubbard, concerning his Freedom of Information Act request. The last two paragraphs of the memorandum contain the staff member's advice, opinions and recommendations concerning the request by Mr. Splitt and have been deleted.

"8. An intra-agency routing slip dated September 30, 1974, has been furnished to the plaintiff. Deleted from that routing slip is a handwritten note by the initiating officer which involved internal deliberations on possible courses of action concerning a Freedom of Information Act appeal by the Church of Scientology."

The other two documents are described in the affidavit of Hugo Ranta,[3] Assistant General Counsel, from whose office they emanate.

"1. One page memorandum of the file dated January 15, 1975. All but the first two sentences of this memorandum have been deleted. The memorandum was written by an attorney in the Office of the General Counsel and concerns the response to a Freedom of Information Act request by the Church of Scientology to the Secret Service. The memorandum contains opinions and advice as to the response to the request.

"2. A Department of the Treasury internal buck slip dated August 29, 1974, concerning an FOIA request from Joel Kreiner on behalf of the Church of Scientology. The buck slip is from a Treasury Department official to an attorney in the Office of the General Counsel and contains opinions and requests legal advice as to the processing of the request."

Essentially, Exemption 5 protects "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). *See EPA v. Mink,* 410 U.S. 73, 93

---

burden. *Reynolds* does not require such a result, and common sense prohibits it.

**3.** *See* footnote 2, supra.

S.Ct. 827, 35 L.Ed.2d 119 (1973). As described in the affidavits, each of the ten documents fall within the penumbra of the agency's "executive" privilege, which, as noted by the Supreme Court in the *Sears, Roebuck* case, exempts from FOIA the "decisionmaking processes of government agencies." 421 U.S. at 150, 95 S.Ct. 1504. Chief Judge Bazelon has written that Exemption 5 "was intended to encourage the free exchange of ideas during the process of deliberation and policy-making; accordingly, it has been held to protect internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes . . . ." *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971). Release of the documents disputed here would frustrate those objectives. Accordingly, summary judgment will be entered for defendants.