Walter C. CLIFF, Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

No. 80 Civ. 1574 RLC.

United States District Court, S. D. New York.

July 30, 1980.

Cahill, Gordon & Reindel, New York City, for plaintiff; George Wailand and Charles A. Gilman, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S.D.N.Y., New York City, for defendant; J. D. Pope, Asst. U. S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Walter C. Cliff brought this action pursuant to the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552, to compel the Internal Revenue Service ("IRS") to disclose certain documents. On May 11, 1979, Cliff, a tax attorney, requested that the IRS release those documents for his use in advising a client. The IRS withheld various documents, claiming they were exempt from FOIA disclosure. 5 U.S.C. § 552(b). On March 11, 1980, after exhausting all administrative appeals, Cliff commenced this action under paragraph (a)(4)(B) of the Act, 5 U.S.C. § 552(a)(4)(B).

The parties have resolved their disputes over the disclosability of all but nine documents or portions thereof, each of which is responsive to Cliff's FOIA request for "[a]ll documents (including but not limited to all written communications as well as memoranda of meetings or telephone conversations) dated or prepared between 1960 and the present containing background material . . . relating to the application of Rev. Proc. 65–17 . . . ." Each party now moves for summary judgment as to these documents.[1] For the reasons given below, I find that these documents are exempt from FOIA disclosure, and grant the IRS's motion for summary judgment.

The documents in question have been identified and described in detail in an affidavit of Ewan D. Purkiss, an attorney in the Disclosure Litigation Division of the IRS Office of Chief Counsel ("Purkiss Affidavit"). They are referred to in the affidavit and by the parties as documents "*b*" through "*j*," and will be so denominated here. For the purposes of the instant motions, the nine documents may be divided into three groups: documents *d* and *e* relate to the tax situations of specific taxpayers; document *j* is an IRS General Counsel Memorandum ("GCM"); and the remaining documents (*b–c, f–i*) are memoranda written by various IRS and Treasury Department personnel pertaining to the subject of Cliff's request. Each group is discussed separately in Part II below.

### I

The Act is "broadly conceived," *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973), "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S.Rep.No. 813, 89th Cong., 1st Sess., 3 (1965); *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975); *EPA v. Mink, supra,* 410 U.S. at 80 n.6, 93 S.Ct. at 832. Specifically, all agency records not otherwise required to be published or available for public inspection must be made available on demand to any member of the public[2] who reasonably describes the records sought, 5 U.S.C. § 552(a)(3);[3] *see NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 137, 95 S.Ct. at 1510, unless they fall into one or more of

---

1. By joint letter of May 20, 1980, the parties agreed to substitute the instant motions for five motions then pending and two more then contemplated, reflecting their resolution of some of their disputes and consolidating the remaining issues in the case for final determination. The parties are to be commended for this practice, both for continuing their attempts at extra-judicial resolution of their legal differences and for their recognition that the case could be resolved most expeditiously by the withdrawal of their various motions already submitted in favor of motions for summary judgment.

2. Prior to the adoption of the Act in 1966, public disclosure of agency records was governed by section 3 of the Administrative Procedure Act, 5 U.S.C. § 1005 (1964 ed.), which made records available only to "persons prop-

erly and directly concerned" with the information sought. "The Act eliminates the 'properly and directly concerned' test of access, stating repeatedly that official information shall be made available 'to the public,' 'for public inspection.'" *EPA v. Mink, supra,* 410 U.S. at 79, 93 S.Ct. at 832.

3. 5 U.S.C. § 552(a)(3) provides that:

Except with respect to the records [otherwise] made available under . . . this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

nine specific and exclusive categories of records exempted from disclosure. 5 U.S.C. § 552(b), (c); *EPA v. Mink, supra,* 410 U.S. at 79, 93 S.Ct. at 832.

There is no dispute that the documents Cliff seeks are covered by the comprehensive disclosure requirements of the Act. The issues in this case relate solely to the applicability to the disputed records of the exceptions to the general rule of disclosure. The IRS claims that documents *d* and *e* are covered by exemption 3, 5 U.S.C. § 552(b)(3),[4] and that the remaining seven documents fall under exemption 5, 5 U.S.C. § 552(b)(5).[5] Cliff argues that the exemptions do not apply to these documents; alternatively, as to the third group of documents (*b–c, f–i*), he claims that the IRS has not provided sufficient information to determine whether exemption 5 applies, and seeks additional discovery.

## II

*Documents d and e*

■ Documents *d* and *e* are memoranda prepared by IRS staff discussing the effects of various IRS Revenue Procedures on the potential or actual tax liability of several specific taxpayers.[6] The IRS contends that these documents constitute "return information" under the Internal Revenue Code ("I.R.C."), which forbids the disclosure of such information, and that FOIA exemption 3 therefore permits the IRS to withhold them.

Exemption 3, 5 U.S.C. § 552(b)(3), provides that the Act's disclosure requirements do not apply to material specifically exempted from disclosure by another statute, provided the statute meets certain criteria.[7] The statute relied upon by the IRS here, I.R.C. § 6103, 26 U.S.C. § 6103, is such a statute. *Breuhaus v. IRS,* 609 F.2d 80, 82 (2d Cir. 1979); *Chamberlain v. Kurtz,* 589 F.2d 827, 838–39 n.33 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Moody v. IRS,* 80–1 U.S.T.C. ¶ 9254 at 83,494 (D.D.C.1980). Therefore, if section 6103 exempts documents *d* and *e* from disclosure under the Internal Revenue Code as the IRS contends, then FOIA exemption 3 does the same under the Act.

---

**4.** FOIA exemption 3, 5 U.S.C. § 552(b)(3), excludes from the Act's disclosure requirements matters

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

**5.** FOIA exemption 5, 5 U.S.C. § 552(b)(5), exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

**6.** Paragraphs 6.d. and 6.e. of the Purkiss Affidavit state:

d. A memorandum dated March 17, 1971, is a memorandum of a conference with certain taxpayers and Internal Revenue Service personnel and is exempt under 26 U.S.C. § 6103 and exemption (b)(3). The conference was held at the request of a taxpayer, who wanted to discuss the potential application of Rev.Proc. 70-23 to certain situations. The memorandum identifies the taxpayers and briefly describes what transpired at the meeting. Attached to the memorandum are three diagrams of transactions and comments on the tax treatment that these transactions might receive. One of the diagrams was prepared by one of the taxpayer conferees. The other two diagrams were prepared either by the attending IRS personnel or the attending taxpayer-conferees in connection with the discussion and determination of the potential liability of the taxpayer conferees.

e. An undated memorandum entitled Report on Interesting Developments. This memorandum is exempt under 26 U.S.C. § 6103 and exemption (b)(3). The memorandum was prepared by an employee of the Office of Assistant Commissioner (Technical) for internal use by the IRS. It first identifies the taxpayers whose liabilities are under consideration. It then poses the question of whether the liability of those taxpayers may be adjusted pursuant to Rev.Proc. 65–17. After describing the transactions giving rise to whether the taxpayer is entitled to a proposed adjustment of liability, the memorandum indicates the District Director's view as to the proposed adjustment and concludes with the author's remarks as to how the application of Rev.Proc. 65-17 would affect the liabilities of the taxpayers in question.

**7.** *See* note 4 *supra.*

Section 6103 prohibits disclosure of "returns" and "return information" to third parties such as Cliff. 26 U.S.C. § 6103(a); *Fruehauf Corp. v. IRS*, 566 F.2d 574, 578 n.6 (6th Cir. 1977); *Moody v. IRS, supra*, 80–1 U.S.T.C. at 83,495; *see also Chamberlain v. Kurtz, supra*, 589 F.2d at 838–39 n.33. "Return information" is defined as

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . ..

\* \* \* \* \* \*

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

26 U.S.C. § 6103(b)(2). It is clear from the descriptions of documents *d* and *e* in the Purkiss Affidavit[8] that both are documents "prepared by, furnished to, or collected by the Secretary with respect to . . . the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax," and thus are covered by the statute.[9] *See Breuhaus v. IRS, supra*, 609 F.2d at 83.

Cliff contends, however, that even if documents *d* and *e* are return information, the IRS should be required to delete any material from them that identifies the taxpayers involved and release them in this sanitized form. He relies for this argument upon the Act's requirement that "[a]ny reasonably segregable portion of a record shall be [released] . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), and the proviso in the definition of return information, the so–called Haskell amendment, *Long v. IRS*, 596 F.2d 362, 365 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), that excludes "data in a form which cannot be associated with, or otherwise identify . . . a particular taxpayer." 26 U.S.C. § 6103(b)(2), *supra*. The IRS contends that documents *d* and *e* consist solely of return information, so that there are no non–exempt portions to segregate, and that the Haskell amendment does not apply.

As indicated above, these two documents fit squarely within the statutory definition of return information, and thus are exempt in their entirety; the IRS is correct in its assertion that they contain no segregable portions under the Act. *See Zale Corp. v. IRS*, 481 F.Supp. 486, 489 (D.D.C.1979). The Haskell amendment argument presents greater difficulty, as research reveals no case that has decided the precise question presented here of whether the IRS must delete material that may identify taxpayers from records otherwise exempt as return information.

Cliff cites three cases involving material exempt from disclosure under FOIA exemption 3 and I.R.C. § 6103 in which the IRS was required to delete certain exempt material from documents and release the remainder. Those decisions, however, are not dispositive of the issue raised here. In *Long v. IRS, supra*, 596 F.2d 362, the court held that the Haskell amendment applied to

---

**8.** *See* note 6, *supra*.

**9.** Cliff requested that documents *d* and *e* be examined *in camera* to determine what parts of them, if any, were exempt from disclosure as return information. However, the Purkiss Affidavit is sufficiently detailed to obviate the need for such inspection, given that the IRS's claims of exemptions are not "too sweeping or sugges-tive of bad faith," *Lead Industries Association v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979), *quoting Weissman v. CIA*, 565 F.2d 692, 698 (D.C. Cir. 1977), and thus there is no need to exercise my discretionary authority, 5 U.S.C. § 552(a)(4)(B), to examine the documents *in camera. See Lead Industries Association v. OSHA, supra*, 610 F.2d at 87 88.

a series of IRS statistical studies [10] based on return information and that the IRS was required to disclose the studies and underlying source material with identifying data deleted, provided the district court determined on remand that such release did not "entail a significant risk of indirect identification." *Id.* at 367. *See also Common Cause v. IRS*, 80–1 U.S.T.C. ¶ 9208 at 83,325 (D.D.C.1979). The question of whether the same obligation would arise in a case involving return information related to an individual taxpayer's situation, rather than that generated in the production of statistical data, was not raised in *Long*.

*Conway v. IRS*, 447 F.Supp. 1128 (D.D.C. 1978), considered the question of whether the IRS could withhold documents in their entirety because they contained some material exempt under I.R.C. § 6103. Without explicitly ruling on the applicability of the Haskell amendment,[11] the court held that section 6103 "prohibits disclosure of return information, not all documents that may contain some such information," *id.* at 1133, and required the IRS to release the portions of the records in question that were not return information. Nothing in *Conway* supports the position that return information itself must be released after the excision of material identifying individual taxpayers.[12]

**10.** The legislative history and language of the amendment lend support to the position that the provision was aimed exclusively at such statistical compilations. See the discussion in the text at pp. 573–574, *infra*, and note 13; *see also Long v. IRS, supra*, 596 F.2d at 367 -69.

**11.** The court said, without providing specific reference to the material it was discussing, that "the only support [the IRS] has for this . . argument [that documents containing some return information are entirely exempt] is its interpretation of Congress' intent as gleaned from the legislative history of the 1976 Tax Reform Act [which contained the Haskell amendment]. The Court finds that legislative history to be inconclusive, however." 447 F.Supp. at 1133.

**12.** The only portions of the documents ordered released in *Conway* dealt with the historical development of a Canadian tax provision, 447 F.Supp. at 1134, which clearly were not return information.

Finally, in *Taxation With Representation Fund v. IRS*, 485 F.Supp. 263 (D.D.C.1980), the court initially ruled that certain records as to which the IRS claimed FOIA exemption 5 applied were not exempt from disclosure, and ordered them released. Thereafter, apparently on a motion for reargument, this holding was amplified to state that the IRS was not required to release those portions of the documents in question that were exempt from disclosure under FOIA exemption 3 and I.R.C. § 6103. *Taxation With Representation Fund v. IRS*, 485 F.Supp. 263 (D.D.C.1980). As in *Conway*, only segments of documents that clearly contained no exempt material were ordered released; no question of an IRS duty to sanitize and release return information was involved.

The IRS contends that the Haskell amendment speaks only to data compilations and statistical surveys, such as those involved in *Long*, rather than information related to particular taxpayers. This view finds support in the scanty legislative history of the amendment: its author explained during the Senate's consideration of the provision that its purpose was "to insure that statistical studies and other compilations of data . . . will continue to the subject to disclosure . . . ." 122 *Cong.Rec.* 24012 (1976).[13] The IRS's inter-

**13.** Senator Haskell, the amendment's author and sponsor, went on to say:

The definition of "return information" was intended to neither enhance nor diminish access now obtainable under the Freedom of Information Act to statistical studies and compilations of data by the Internal Revenue Service. Thus, the addition by the Internal Revenue Service of easily deletable identifying information to the type of statistical study or compilation of data which, under its current practice, has been subject to disclosure, will not prevent disclosure of such study or compilation under the newly amended section 6103. In such an instance, the identifying information would be deleted and disclosure of the statistical study or compilation of data be made.

122 *Cong.Rec.* 24012 (1976). The amendment was adopted without debate or further discussion. *Ibid.* Because it was introduced during Senate floor debate on the Tax Reform Act of 1976, Pub.L.No.94–455, the amendment is not discussed in any of the several House and Sen-

pretation is also more consistent with the language of the statute than is Cliff's: the use of the narrow term "data" in the amendment, rather than a broader one such as "records" or "material," when read with the legislative history, is somewhat persuasive; and it is difficult to understand why Congress would have forbidden disclosure of all of the many components of return information, 26 U.S.C. § 6103(b)(2)(A), supra, if the simple elimination of the taxpayer's identity would allow such information to be released.

These latter arguments carry the day for the government. Statutory interpretation must begin with analysis of the language adopted by Congress, Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), and the language here suggests both that the Haskell amendment was intended to reach only statistical studies and that Congress did not intend the IRS to have to delete taxpayer identifications from pure return information relating to individual taxpayers. To give the Haskell amendment the interpretation Cliff urges would nullify much of the effect of section 6103 as it relates to return information, the clear purpose of which was to prohibit dissemination of all the types of such information listed in section 6103(b)(2)(A), supra. See Zale Corp. v. IRS, supra, 481 F.Supp. at 489. This the court cannot do. See Marsano v. Laird, 412 F.2d 65, 70 (2d Cir. 1969); United States v. Blasius, 397 F.2d 203, 207 n.9 (2d Cir. 1968), cert. dismissed, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969); International Telephone and Telegraph Co. v. American Telephone and Telegraph Co., 444 F.Supp. 1148, 1155 (S.D.N.Y.1978) (Goettel, J.). Rather, to give effect to Congress' purpose, see

Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975), the various parts of the statute must be read together to produce a "sensible and workable whole." United States v. Mejias, 417 F.Supp. 579, 583 (S.D.N.Y.) (Carter, J.), aff'd sub nom. United States v. Martinez, 538 F.2d 921 (2d Cir. 1976).

Reading the Haskell amendment together with the definition of return information that precedes it in the statute compels the conclusion that the IRS is correct in its contention that it need not delete identifying material from documents d and e. If Congress had intended to impose such a duty, it simply would have defined return information as information revealing a taxpayer's identity, and required the IRS to delete such information from requested documents whenever feasible. Cliff's interpretation must be rejected as contrary to the purpose of Congress in enacting section 6103, the relevant legislative history, and the plain meaning of the language of the statute.

Therefore, the court concludes that I.R.C. § 6103 prohibits disclosure of documents d and e, which are thus exempt from disclosure under the Act pursuant to exemption 3. The IRS need not release any portion of these documents to Cliff.

*Document j*

Document j is a GCM written in response to an internal IRS request for an evaluation of a proposed revenue procedure. After an analysis of the proposal, the GCM concludes by recommending that the problem it addressed be resolved by means other than a revenue procedure.[14] The IRS contends

---

ate Committee reports on the bill, see H.R.Rep. Nos.94–658, 94–1380, 94th Cong., 2d Sess. (1976); S.Rep.No.94–938, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 2897; nor is it mentioned in either chamber's conference committee report. See H.R.Rep.No. 94-1515, 94th Cong., 2d Sess. (1976); S.Rep. No.94–1236, 94th Cong., 2d Sess. (1976); see generally [1976] U.S.Code Cong. & Admin. News, p. 2897 et seq. Therefore, the Senate floor debate, quoted above, provides the only

indication as to Congress' intent in enacting the Haskell amendment.

14. Paragraph 6.j. of the Purkiss Affidavit states:

j. A memorandum of August 1, 1968, is a General Counsel memorandum (GCM) from the Chief Counsel to the Internal Revenue Service to the Assistant Commissioner (Technical). It is an intra–agency memorandum that is exempt under (b)(5). It is addressed

that document *j* is exempted from disclosure by exemption 5 [15] as an "intra–agency memorandum[ ]: . . . not . . . available by law to a party . . . in litigation with the agency." [16] Cliff responds that prior cases have held GCM's not exempt under this provision, and that the IRS is bound by those decisions.

FOIA exemption 5 essentially embodies the privileges against discovery that have developed in modern agency civil litigation: (i) the "generally . . . recognized" privilege for "confidential intra–agency advisory opinions. . . .," *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 946 [Ct.Cl.1958], disclosure of which "would be 'injurious to the consultative functions of government . . .' *Kaiser Aluminum & Chemical Corp., supra* 157 F.Supp., at 946, . . ." *EPA v. Mink, supra*, 410 U.S., at 86–87 [93 S.Ct., at 835–836] . . . (sometimes referred to as "executive privilege"), and (ii) the attorney–client and attorney work–product privileges generally available to all litigants.

*NLRB v. Sears, Roebuck & Co., supra*, 421 U.S. at 149, 95 S.Ct. at 1516. In this case, the IRS relies on the first of these privileges, which is intended to protect the " 'decision making processes of government agencies' . . ., and focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Id.* at 150, 95 S.Ct. at 1516 (citations omitted).

■ To qualify for exemption 5, a record must be both "predecisional," in that it relates to a decision not yet reached rather than explains one already determined, and "deliberative," in that it represents part of the actual decision–making process rather than interprets existing decisions or policies or describes purely factual matters. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 83 (2d Cir. 1979); *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *Falcone v. IRS*, 479 F.Supp. 985, 988 (E.D.Mich. 1979), *appeal pending*, No. 80–1105 (6th

to the attention of the Director, Income Tax Division. The memorandum starts with an identification of the taxpayer whose case gave rise to the proposed Rev.Proc. (That identity is exempt from disclosure by 26 U.S.C. § 6103 and exemption (b)(3)). In its first paragraph, the memorandum recites that it is written in response to Technical's request that the Chief Counsel's Office review a proposed Rev.Proc. and in the second paragraph states that author's view as to whether the proposed Rev.Proc. ought to be adopted. The third paragraph describes the existing Rev.Proc., which would be modified by the proposed Rev.Proc., and notes that the existing Rev.Proc. was modified in the past. The fourth paragraph describes the author's perception of the "specific problem" to which the proposed Rev.Proc. "is apparently addressed." The fifth, sixth and seventh paragraphs detail the author's reactions to the proposal and the basis of these reactions. For example, the author comments on his perception of what the proposed Rev.Proc. "appears to do," and the tax claims that it "might seem to permit." In the eighth paragraph, the author "recommend[s] that [Technical] may wish to consider" whether the problem that gave rise to the proposed Rev. Proc. might be solved by the promulgation of a different kind of publication, one other than a Rev.Proc. Finally, the memorandum notes

that a different division of the IRS is currently working on a publication that might solve the problem which Technical is trying to solve through its proposed Rev.Proc. The memorandum suggest[s] that consideration of the proposed Rev.Proc. be deferred until this other publication is drafted, so that a coordinated approach can be worked out. This memorandum contains no citations to any Internal Revenue Service regulations, Treasury regulations or any other GCM. I have reviewed the citator card (index card) in the Digest Section, Administrative Service Division, Office of Chief Counsel, which would note the citing of this GCM in subsequent GCMs or Office of Chief Counsel internal memoranda. The citator card reveals that this GCM has not been cited in a subsequent GCM and has been cited in one subsequent internal memorandum of the Office of Chief Counsel.

**15.** As the IRS contends, *see* note 14, *supra*, and Cliff does not disagree, the portion of document *j* revealing the identity of the taxpayer whose situation gave rise to the GCM is exempt from disclosure under I.R.C. § 6103 and FOIA exemption 3.

**16.** *See* note 5, *supra*.

Cir.); *see also NLRB v. Sears, Roebuck & Co., supra*, 421 U.S. at 151–52, 95 S.Ct. at 1516–1517. In sum, this exemption,

> properly construed, calls for "disclosure of all 'opinions and interpretations' which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 797 (1967). . . .

*Id.* at 153, 95 S.Ct. at 1517.

The IRS argues that document *j* is clearly predecisional and deliberative, relying on the description in the Purkiss Affidavit.[17] It emphasizes that this GCM merely gives advice about whether or not to proceed with the proposed revenue procedure at all, rather than about the substantive content of the proposal, and that it neither interprets nor relies on prior law or IRS policy. Thus, the IRS concludes, document *j* "is purely advisory, not interpretive. In short, [it] constitutes a recommendation to continue the deliberative process." Def't Memorandum 24.

Cliff relies principally on three decisions holding that IRS GCM's are not exempt from disclosure under the governmental process privilege: *Taxation With Representation Fund v. IRS, supra*, 485 F.Supp. 263; *Caspe v. United States*, 80–1 U.S.T.C. ¶ 9201 (S.D. Iowa 1980); and *Falcone v. IRS, supra*, 479 F.Supp. 985. Citing *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 750–51 (9th Cir. 1979), and *Common Cause v. IRS, supra*, 80–1 U.S.T.C. ¶ 9208, he argues that the IRS is collaterally estopped from relitigating the applicability of FOIA exemption 5 to the GCM at issue in this case.

Under the modern doctrine of collateral estoppel, a party who has had a full and fair opportunity to litigate an issue and lost in prior litigation may be foreclosed from relitigating that issue in subsequent cases, even where the opposing party is different in each case. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Where, as here, a plaintiff seeks to use the doctrine "offensively" to estop a defendant from defending a position that failed in a prior case, courts have broad discretion to determine whether the doctrine should be applied, and should generally reject it where the plaintiff easily could have joined in the earlier action or where its application would be unfair to the defendant. *Parklane Hosiery Co., Inc. v. Shore, supra*, 439 U.S. at 331, 99 S.Ct. at 651.[18] There is no question that Cliff could not easily have joined in any of the prior FOIA cases involving GCM's, and thus the questions here are whether the IRS had a complete opportunity to argue the applicability of exemption 5 to document *j* in earlier cases and, if so, whether it would be unfair to preclude it from rearguing the issue now.

Two of the cases Cliff relies upon, *Falcone* and *Caspe*, did not present the same issues as the instant case, and therefore cannot operate as an estoppel here. *Kaplan v. Bennett*, 465 F.Supp. 555, 559–60 (S.D.N.Y.1979) (Tenney, J.); *see also Lead Industries Ass'n v. OSHA, supra*, 610 F.2d at 78. *Falcone* and *Caspe*, which relied exclusively on *Falcone*, each involved individual GCM's very different from document *j*. The documents at issue in those cases were generated during the process leading

---

17. *See* note 14, *supra*.

18. The Court in *Parklane* gave three examples of situations that might make the allowance of "offensive" collateral estoppel unfair to defendants: if the stakes in the earlier action were slight and future suits not foreseeable, the defendant may have had little incentive for a vigorous defense; the prior judgment against the defendant relied upon as the basis for es-

toppel may itself be inconsistent with previous judgments in the defendant's favor; and the later action may afford the defendant important, procedural opportunities unavailable in the prior case. 439 U.S. at 330–31, 99 S.Ct. at 651–652. This list was given explicitly by way of example and not meant to be exhaustive, however. *Id.* at 331, 99 S.Ct. at 651.

to the promulgation of revenue rulings, and were explicitly characterized as "statement[s] of policy and interpretation adopted by the agency," as "not deliberative," and as the agency's "secret law." 479 F.Supp. at 988; 80–1 U.S.T.C. at 83,312–13. In contrast, document *j* deals with whether or not a proposed revenue procedure should be pursued at all, rather than with its substantive characteristics. Because it takes no position on the underlying tax policy issues, it cannot be characterized as stating policy or interpretation or as "secret law," and is much more clearly deliberative than the GCM's in *Falcone* and *Caspe*.

*Taxation With Representation Fund* presents a more difficult question, as it purported to deal with the applicability of FOIA exemption 5 to all IRS GCM's, including document *j.* The court there concluded that "GCM's contain the reasons behind the adoption of revenue rulings, private letter rulings, and technical advice memoranda . . . . are indexed and have important precedential value in determining future tax questions," and that "[the] differences between [a] GCM and [the] ruling [it discusses] are resolved before the GCM is considered complete and before it becomes available for future reference." 485 F.Supp. at 266. The court therefore held that GCM's were expressions of agency policy rather than deliberative documents and were not protected from disclosure by FOIA exemption 5. *Ibid.*

The IRS cannot claim that the issue here of the applicability of exemption 5 to document *j* was not decided in *Taxation With Representation Fund,* or that it had less than a full and fair opportunity to litigate this issue there. However, it remains to be determined, by consideration of all the relevant circumstances of that case and this one, whether holding the judgment there conclusive as to document *j* would be unfair to the IRS.

Because the plaintiff in that case sought access to *all* GCM's, the IRS of necessity relied on a general summary description of the nature and functions of such documents. Thus the court was forced to rule on the applicability of exemption 5 to a class of documents without attention to the particular characteristics of individual members of that class. Relying on an IRS affidavit, the court described the GCM's as follows:

GCM's are legal memoranda from the Office of Chief Counsel . . . prepared in response to a formal request for legal advice from the Assistant Commissioner (Technical). . . . in connection with the review of proposed private letter rulings, proposed technical advice memoranda, and proposed revenue rulings. . . . [They] set forth the issues presented . . ., the conclusions reached and a brief factual summary. . . . [and] a lengthy analysis of the substantive issues, and the recommendations and opinions of the Office of Chief Counsel. . . .

\*    \*    \*    \*    \*    \*

. . . The Office of Assistant Commissioner (Technical) will use the GCM as a guide as to what positions will be taken in the proposed revenue ruling, proposed private letter ruling, or proposed technical advice memorandum. . . . [O]n occasion, differences may arise between the positions of the Office of Assistant Commissioner (Technical) and . . . the Office of Chief Counsel. These differences are generally reconciled on an informal basis before the adoption of the revenue ruling, private letter ruling, or technical advice memorandum in question. Then a copy of the completed GCM is distributed and placed in the [IRS] digest system to enable future reference.

*Id.* at 265–66.

Virtually none of this description applies to document *j*: it relates to a proposed revenue procedure, rather than a letter ruling, revenue ruling or technical advice memorandum; the substantive issues raised by the proposal are barely touched upon and the final recommendation is not related to them; this GCM, by its very nature, could not have guided the Assistant Commissioner in formulating the proposed revenue procedure; and, finally, because docu-

ment *j* did not make affirmative suggestions as to the content of the proposal, there could be no "reconciliation" of differences to reflect the revenue procedure eventually adopted. Nor does the conclusion of the court in *Taxation With Representation Fund* that "GCM's contain the reasons behind the adoption" of various IRS rulings, 485 F.Supp. at 266, have any application to document *j*.

It is thus apparent that *Taxation With Representation Fund* is not addressed to GCM's such as document *j*, though on its face it applies to all IRS GCM's. The IRS could not reasonably have been expected in that case to isolate and discuss individually each GCM that might not fall within the normal GCM pattern. It would be patently unfair to bind the IRS now by a ruling in a case in which it failed, in good faith, to put the issues now disputed before the court, and upon which the court therefore did not pass. The IRS is not estopped from contesting the disclosability of document *j*.

■ Turning to the merits of the IRS's exemption argument, it is obvious from the above comparison of document *j* with the

GCM's considered in *Falcone, Caspe,* and *Taxation With Representation Fund* that document *j* is not an explanation or interpretation of agency policy, as were the GCM's described in *Taxation With Representation Fund* that are specifically revised to reflect accurately the final agency action. Rather, it represents a part of the predecisional, deliberative process of considering whether the proposed revenue procedure should be adopted, of "working out [the agency's] policy and determining what its law shall be," *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 153, 95 S.Ct. at 1518, that exemption 5 was intended to exclude from the disclosure requirements of the Act. The IRS is not required to release document *j*.

### Documents b, c, f, g, h and i

■ The remaining documents in dispute are a series of unrelated internal IRS memoranda discussing the subject covered by Cliff's FOIA request. Documents *c* and *i* simply memorialize staff meetings at which this topic was discussed;[19] the other four,

19. Paragraphs 6.c. and 6.i. of the Purkiss Affidavit state:

c. A document entitled Chief Counsel's ·Fall Meeting consists of three pages of the minutes of a meeting held October 2 -4, 1967. The document is from the Director, Operations and Planning Division, to Chief Counsel's Staff, Division Directors and Regional Counsel. The document was released in substantial part to plaintiff (*see* Exhibit G, Complaint). The deleted portions are either not responsive to Cliff's FOIA request, or exempt under (b)(5), for they all record an informal exchange of views between IRS personnel, as follows:

(i) The first paragraph on page 10- this consists of comments and criticisms by participants in the meeting concerning a pilot audit program that was being tested in one of the IRS districts. This material was deemed to be outside the scope of Cliff's FOIA request and appeal.·

(ii) A clause in the second paragraph of page 10--this consists of an expression of opinion by one of the participants as to an interpretation that possibly could be given to the Tax Court case referred to in that paragraph. It is exempt under (b)(5).

(iii) A clause in the final sentence of the second paragraph on page 11--this records one participant's expression of the IRS' diffi-

culty understanding the logical consistency of a particular Tax Court case. It also notes the participant's opinion as to the potential effect of that case on other cases being brought by the IRS. It is exempt under (b)(5).

(iv) A portion of the last paragraph on page 11 this consists of one of the participant's suggestions concerning possible approaches to a certain type of taxpayer situation, in light of the court rulings referred to on that page. The participant notes that the IRS has not yet developed a unified approach to the situation that he is discussing. This portion is exempt under (b)(5).

(v) The final paragraph on page 12 this consists of a discussion concerning how non · docketed cases should be handled within the IRS to assure compliance with statutory deadlines. Recommendations concerning the establishment of relevant internal controls were discussed. This material was deemed to be outside the scope of Cliff's FOIA request and appeal.

\* \* \* \* \* \*

i. Another memorandum at issue is a handwritten memorandum of an IRS staff conference dated December 12, 1970, (the memorandum had previously been referred to as undated). It is an intra agency memo-

none of which has been adopted or incorporated by reference in a subsequent IRS final action,[20] contain staff opinions or recommendations regarding proposed modifications of various revenue procedures.[21] The IRS contends that these documents are,

randum that is exempt under (b)(5). The memorandum identifies questions that were raised concerning the coverage of Rev.Proc. 70 23 and the possibility of amending it. The memorandum also contains diagrams and brief statements of the issues that need to be resolved. It further offers proposed responses to the issues raised.

Those portions of document c that are outside the scope of Cliff's FOIA request, segments (i) and (v), *supra*, of course, need not be disclosed. Only records as to which a proper FOIA request has been made and refused and all administrative remedies exhausted may be the subject of an action to compel disclosure. *Television Wisconsin, Inc. v. NLRB*, 410 F.Supp. 999, 1001 (W.D.Wis.1976); *Bodner v. FTC*, 75 1 Trade Cas. ' 60,171 at 65,554 (D.D.C. 1975).

**20.** The IRS has supplied an affidavit of John L. Crawford, Chief of the Corporation Tax Branch, Corporation Tax Division, of the IRS Office of Assistant Commissioner (Technical), in which Crawford states, based on familiarity with documents b, f, g and h gained in the performance of his duties, that none of the proposed revenue procedures discussed in these documents, when eventually promulgated, either adopted or incorporated by reference any of these documents.

**21.** Paragraphs 6.b, 6.f, 6.g and 6.h of the Purkiss Affidavit state:

b. A memorandum dated September 11, 1972, is from the Associate Chief Counsel (Technical) to the Assistant Commissioner's (Technical) Principal Technical Advisor with an attached draft of a proposed clarification of Rev.Proc. 65–17. The cover memorandum, dated September 11, 1972, was released to Cliff (*see* Exhibit G, Complaint) and is annexed to this affidavit as Exhibit A. The attached draft, which was withheld, is an intra–agency memorandum that is exempt under (b)(5). It is three pages long. It consists of handwritten notes, interlineations, deletions, comments and other annotations to the draft. All of the handwritten notations reflect advice from staff members of the Corporation Tax Branch (Technical) and the Office of the Associate Chief Counsel (Technical) concerning suggested changes in the draft of the proposed clarification.

\* \* \* \* \* \*

f. A memorandum dated January 20, 1970, is entitled "Proposed Modifications of Rev.Proc. 65–17 regarding the offset of dividend payments against section 482 allocations." It is an intra–agency memorandum that is exempt under (b)(5). It is from two Treasury Department staff members to another such staff member. Internal Revenue Service (Technical) had solicited the views of the memorandum's authors, two Treasury Department analysts, on the proposed modifications. The memorandum consists of a "simplified" summary of facts regarding a specific taxpayer's situation, which gave rise to the proposal to modify (this information is exempt from disclosure by 26 U.S.C. § 6103 and exemption (b)(3)), a statement of the issue, and recommendations regarding the proposed modifications of Rev.Proc. 65–17.

g. A memorandum dated April 29, 1971, is from the Director, Income Tax Division, to the Director, Audit Division. It is [an] intra–agency memorandum that is exempt under (b)(5). It was written in response to a November 5, 1970 inquiry by the Director, Audit Division regarding a possible "clarification" of Rev.Proc. 70 23. A "clarification" of a Rev.Proc. is designed to clarify an existing Rev.Proc. and would appear as a subsequent Rev.Proc. The first paragraph of the memorandum recites that it was written to provide the author's views with regard to the application of Rev.Proc. 70-23 to two abstract cases, which had been perceived by the Audit Division as creating a need for clarification of the Rev.Proc. The second paragraph consists of a brief discussion of Rev.Proc. 70-23 that are relevant [sic] to the author's analyses of the proposed clarification. The third and fourth paragraphs of the memorandum consist of the author's views as to the applicability of Rev.Proc. 70-23 to the two abstract cases. Having set forth these views, the author proceeds, in the final paragraph, to express his intentions concerning whether or not to initiate the proposed clarification of Rev.Proc. 70 23.

h. The memorandum of August 11, 1971, is entitled "Revenue Procedures 65-17 and 70 23." It is an intra agency memorandum that is exempt from disclosure under (b)(5). It transmits from the Chief, Group 1, Section 3 to Chief of the Projects Section (both of these sections are subdivisions of the Office of the Assistant Commissioner (Technical)) a memorandum that a Treasury Department analyst addressed to his files. The file memorandum records a meeting between the analyst and members of IRS (Technical). The meeting was called by the latter to elicit the analyst's views as to the application of Rev. Proc's. 65- 17 and 70–23 to three abstract cases (which were believed to demonstrate a need for amplification of the Rev.Proc's.) and records the exchange of views that occurred at the meeting. It then goes on to express the analyst's opinions and conclusions concerning whether the Rev.Proc's. should be amplified. The transmittal memorandum re-

on their faces, both predecisional and deliberative, and are entitled to the protection of exemption 5, discussed above.

Cliff does not take issue with this contention directly. Instead, he argues that before relying on exemption 5, the IRS must demonstrate by exhaustive recitation of all subsequent agency uses of the documents in question that these records have not somehow become part of the agency's internal working law, and that the IRS's failure to meet this burden entitles him to summary judgment as to these documents, or, at the very least, to discovery on the question of their subsequent use by the IRS.[22] He relies for this argument on brief excerpts from two important FOIA cases: *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 138, 95 S.Ct. at 1510 ("Crucial to the decision of this case is an understanding of the function of the documents in issue in the context of the administrative process which generated them."), and *Lead Industries Ass'n v. OSHA, surpa,* 610 F.2d at 80 ("Whether a particular document is exempt under [exemption 5] depends not only on the intrinsic character of the document itself, but also on the role it played in the administrative process.").

These cases do not support Cliff's position. Rather, they state the principle, discussed generally above, that in order to qualify for FOIA exemption as predecisional, deliberative records, documents must be shown not to constitute final agency opinions or statements of policy, and not to have been adopted or incorporated in such opinions or statements at some time subsequent

to their creation. *See NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 153–54, 161, 95 S.Ct. at 1517–1518, 1521; *Lead Industries Ass'n v. OSHA, supra,* 610 F.2d at 86. In *Sears,* the Court explicitly held that "if an agency chooses *expressly* to adopt or incorporate by reference an intra–agency memorandum previously covered by exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5." 421 U.S. at 161, 95 S.Ct. at 1521 (emphasis in original). No other means of making an exempt document non–exempt by subsequent use is mentioned.

In fact, several courts have ruled that subsequent use in an agency's decision–making process of a predecisional, deliberative document, short of adoption or incorporation in a final opinion, does not divest the document of its exemption from disclosure. "The argument that all documents [subsequently] relied upon [by the agency] are disclosable turns Exemption 5 on its head; the more a document was part of the predecisional deliberative process, the more likely it would be subject to disclosure. This was not the intent of the Congress." *United States v. J. B. Williams Co., Inc.,* 402 F.Supp. 796, 803 (S.D.N.Y.1975) (Pierce, J.). *See, e. g., Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 184–85, 95 S.Ct. 1491, 1500–1501, 44 L.Ed.2d 57 (1975); *Shermco Industries, Inc. v. Secretary of Air Force,* 613 F.2d 1314, 1319–20 (5th Cir. 1980); *Sterling Drug, Inc. v. FTC,* 450 F.2d 698, 705–08 (D.C.Cir. 1971); *Bast*

---

quests that the Chief of the Projects Section commence work on the amplification of Rev. Proc's. 65-17 and 70-23 in accordance with one of the analyst's suggestions.

**22.** The type of information that Cliff claims the IRS must supply is indicated by the interrogatories served on the IRS in this case, the appropriateness of which is one issue here. They request, in part, the following as to each document:

b) Describe each use to which the document has been put within the IRS and identify by title and responsibility each IRS employee who has access to the document;

c) Describe generally, and provide the date of, any decision which was reached on the subject matter of the document and describe the role which the author of the document and the document itself played in the decision making process.

Incidentally, much of the information requested in paragraph "c" was supplied in the Crawford Affidavit, *see* note 20, *supra,* which indicated what final agency action was taken with regard to the subject matters of documents *b, f, g,* and *h,* and stated that none of these documents was adopted or incorporated by reference in these final actions.

*v. IRS*, 78–1 U.S.T.C. ¶ 9418 at 84,103 (D.Colo.1978); *American Federation of Government Employees v. Dep't of Army*, 441 F.Supp. 1308, 1311 (D.D.C.1977). *But cf. Pies v. IRS*, 484 F.Supp. 930, 932–33 (D.D.C.1979), *appeal pending*, No. 79–2303 (D.C.Cir.).[23]

The IRS has met its burden of demonstrating that these documents, which on their faces are encompassed by exemption 5, have not been adopted or incorporated in subsequent final agency action, and retain their predecisional and deliberative character. No additional information regarding the agency's internal use of the documents is necessary for a determination of their disclosability under the Act. Therefore, Cliff's request for discovery is denied, and the IRS is entitled to withhold documents *b, c, f, g, h,* and *i.*

### III

Accordingly, the IRS is not required by the Act to release any of the nine disputed documents to Cliff, because each is covered by an explicit statutory exemption to the Act's disclosure requirements. Therefore, Cliff's motion for summary judgment is denied, the IRS's motion is granted and the complaint is dismissed.

IT IS SO ORDERED.

---

**23.** In *Pies*, the court ordered disclosure of draft regulations never adopted, after finding that, "given its filing system, the IRS cannot show that the . . . drafts have not been or will not be used and relied upon in connection with issuance of private letter rulings and other determinations." 484 F.Supp. at 932–33. Cliff argues that this conclusion supports his position that subsequent agency use of an exempt document can strip it of its exemption. However, the court was explicit in its belief that "[f]or all substantive purposes, the IRS has adopted the drafts . . . [and] used that material in some final, formal way . . . ." *Id.* at 933. Thus, at most, *Pies* holds that a document *implicitly* adopted by an agency as final action is no more entitled to an FOIA exemption than is one *expressly* adopted. *See NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 161, 95 S.Ct. at 1521. Further undermining Cliff's argument is the fact that the court in *Pies* expressly distinguished the situation there, of informal and unofficial but practical adoption of drafts, with "the usual case where a set of draft regulations has either led to no final project or has led to promulgation of final rules. In either of those cases, the unadopted preliminary drafts and advisory memoranda would not be subject to mandatory disclosure under FOIA." 484 F.Supp. at 933. The documents in this case clearly fall into the "usual case" of exempt preliminary drafts and advisory memoranda.