**WILLAMETTE INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America and Jerome Kurtz, Commissioner of Internal Revenue, Defendants.**

**Civ. No. 78–336.**

United States District Court, D. Oregon.

May 28, 1981.

Charles P. Duffy, Phillip N. Jones, Duffy, Georgeson, Kekel & Benner, Portland, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Judith Kobbervig, Asst. U. S. Atty., Portland, Or., Michael J. Kearns, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

PANNER, District Judge:

Plaintiff, Willamette Industries, a timber producer and manufacturer of wood and forest products, brought this Freedom of Information Act (FOIA) action to gain access to documents kept by the Internal Revenue Service, which would show how the IRS arrives at fair market values for timber in making tax assessments for the timber harvested by plaintiff each year.

Specifically, plaintiff seeks:

a) access to IRS findings as to the fair market value of timber in western Oregon and northern Louisiana, for tax years ending 1974, 1975 and 1976; and

b) access to private timber sales data compiled by the IRS or foresters, for use by the IRS as comparable sales in the valuation of timber subject to tax.[1]

Plaintiff contends that disclosure is required under 5 U.S.C. § 552(a)(2), because the materials sought are "final opinions of an agency," and that the material is not exempt from disclosure under 26 U.S.C. § 6103, because the documents sought are data and statistics, and are covered by the Haskell amendment, 26 U.S.C. § 6103(b)(2).

The matter was submitted on the record and on briefs. Disclosure is ordered.

## SUMMARY OF ISSUES

Under the FOIA, the agency has the burden when it contends that requested documents are exempt from disclosure. *Ollestad v. Kelly*, 573 F.2d 1109, 1110 (9th Cir. 1978). Accordingly, to prevail, the government must show that:

1. The material sought is not a "final opinion," within the meaning of 5 U.S.C. § 552(a)(2), *OR*

2. The material sought is not statistics or data within the meaning of the Haskell amendment, *OR*

3. The material sought cannot be edited so as to avoid identifying taxpayers, *OR*

4. The material, after the necessary editing, would be meaningless, *OR*

5. The burden of editing the material would be too high.

■ The legislative history of the FOIA emphasizes that it is not a withholding statute but a disclosure statute. Uncertainties in the statutory language are to be resolved in favor of disclosure, and exemptions are to be read narrowly. *County of Madison, New York v. U. S. Department of Justice*, 641 F.2d 1036, 1040 (1st Cir. 1981).

## DISCUSSION

1. *Are the Documents Sought "Final Opinions" under 5 U.S.C. § 552(a)?*

5 U.S.C. § 552(a)(2)(A) provides:

(a) Each agency shall make available to the public information as follows:

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(A) Final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases.

■ Defendants contend that the engineer's reports sought by plaintiff are not "final opinions," within the meaning of this section. They assert that the engineer's reports, from which the fair market value is determined, are not "final," but only recommendations, subject to agency and to judicial appeal. They rely on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), for the proposition that agency reports which lead to litigation are not final.

1. Plaintiff's original FOIA request included a request for administrative manuals and instructions relating to timber valuation, and defendants have supplied plaintiff with this material.

Plaintiff correctly challenges the breadth of this assertion. *Sears* held that appeals and advice memoranda, prepared by the NLRB General Counsel, were exempt from the FOIA under exemption five, covering attorney work product. Defendants have not, and could not, claim this exemption, because the material they wish to protect is not attorney work product.

The Court in *Sears* made it clear that this conclusion rested not on the characteristic of "finality" in the document in question, but rather on the attorney work-product exemption:

> We recognize that an Advice or Appeals Memorandum directing the filing of a complaint—although representing only a decision that a legal issue is sufficiently in doubt to warrant determination by another body—has many of the characteristics of the documents described in 5 U.S.C. § 552(a)(2). Although not a "final opinion" in the "adjudication" of a "case" because it does not effect a "final disposition," the memorandum does explain a decision already reached by the General Counsel which has real operative effect—it permits litigation before the Board; and we have indicated a reluctance to construe Exemption 5 to protect such documents. *Supra*, at 153. We do so in this case only because the decisionmaker—the General Counsel—must become a litigating party to the case with respect to which he has made his decision. The attorney's work-product policies which Congress clearly incorporated into Exemption 5 thus come into play and lead us to hold that the Advice and Appeals Memoranda directing the filing of a complaint are exempt whether or not they are, as the District Court held, "instructions to staff that affect a member of the public."

421 U.S. at 160, 95 S.Ct. at 1521.

Unlike the appeals and advice memoranda, the engineer's reports plaintiff seeks are routinely disclosed to taxpayers, either informally or as part of a statutory notice of deficiency. The engineer's report is the agency's final opinion on the valuation of timber. Defendants' expert agreed with plaintiff's expert that the engineer's reports are "final opinions of timber valuation."

Defendants' argument that no opinion can be final which is subject to judicial review must fail. Nearly all agency opinions are subject to judicial review. I find no intent to exclude such orders from the provisions of the Act merely because they are appealable.

2. *26 U.S.C. § 6103: Haskell Amendment's Applicability to the Requested Material.*

Defendants claim that plaintiff's request is exempt from the FOIA under 5 U.S.C. § 552(b)(3), which excludes from disclosure matters:

> specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

They contend that 26 U.S.C. § 6103 qualifies as such a statute, *Chamberlain v. Kurtz*, 589 F.2d 827, 838–39 n.33 (5th Cir.) *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), and that it precludes disclosure of the return information sought by plaintiffs.

26 U.S.C. § 6103, in pertinent part, provides:

> § 6103. Confidentiality and disclosure of returns and return information
>
> (a) General rule.—Returns and return information shall be confidential, and except as authorized by this title—
>
> > (1) no officer or employee of the United States,
> >
> > (2) no officer or employee of any State or of any local child support enforcement agency who has or had access to returns or return information under this section, and
> >
> > (3) no other person (or officer or employee thereof) who has or had access to returns or return information under

subsection (e)(1)(D)(iii), subsection (m)(4)(B), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

(b) Definitions.—For purposes of this section—

(1) Return.—The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

(2) Return information.—The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

Plaintiff agrees that the information it seeks is "return information," but contends that it is "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer" —the Haskell amendment's qualification to section 6103. Defendants contend that the Haskell amendment does not apply because the material sought is not the sort of data covered by the amendment. They argue that the Haskell amendment is aimed only at statistical studies and compilations of data, and that the engineer's reports and private sales information requested by plaintiff do not fit that description. Two cases are helpful on this issue: *Long v. U. S. Internal Revenue Service*, 596 F.2d 362 (9th Cir. 1979) *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), and *Cliff v. Internal Revenue Service*, 496 F.Supp. 568 (S.D.N.Y.1980).

a. *Long*

In *Long*, plaintiffs sought disclosure of information compiled in the IRS Taxpayer Compliance Measurement Program (TCMP). The IRS disclosed their statistical tabulations on the TCMP, but refused to disclose their source material, which consisted of computer data tapes containing all financial data reported on an individual taxpayer return, and check sheets, which, in addition to the financial data, included the taxpayer's name, address, and audit information. Plaintiffs were primarily interested in the data tapes, and asked for check sheets only when necessary to interpret the tapes.

The Ninth Circuit ruled that the IRS must disclose the data. The specific data covered by the Haskell amendment was not directly addressed, but the Court gave a broad reading to the amendment, and said that it "demonstrates a purpose to permit the disclosure of compilations of useful data in circumstances which do not pose serious risks of a privacy breach." *Id.* at 368. The

Court declined to limit the scope of the amendment to past agency practices. It referred to Senator Haskell's comment that "the addition by the Internal Revenue Service of easily deletable identifying information to the type of statistical study or compilation of data which under its current practice, has been subject to disclosure, will not prevent disclosure . . . ," and declined to interpret it as a codification of existing IRS practices.

These statements indicate a broad reading of the amendment, with a presumption in favor of disclosure.

### b. *Cliff*

In *Cliff*, plaintiff sought IRS staff memoranda discussing the effects of various IRS revenue procedures on the potential or actual tax liability of several specific taxpayers. The Court accepted the IRS argument that the Haskell amendment speaks only to data compilations and statistical surveys rather than information related to particular taxpayers:

> This view finds support in the scanty legislative history of the amendment: its author explained during the Senate's consideration of the provision that its purpose was "to insure that statistical studies and other compilations of data . . . will continue to the [sic] subject to disclosure . . . ." 122 *Cong.Rec.* 24012 (1976). The IRS's interpretation is also more consistent with the language of the statute than is Cliff's: the use of the narrow term "data" in the amendment, rather than a broader one such as "records" or "material," when read with the legislative history, is somewhat persuasive; and it is difficult to understand why Congress would have forbidden disclosure of all of the many components of return information, 26 U.S.C. § 6103(b)(2)(A), *supra*, if the simple elimination of the taxpayer's identity would allow such information to be released.
> These latter arguments carry the day for the government. Statutory interpretation must begin with analysis of the language adopted by Congress, . . . and

the language here suggests both that the Haskell amendment was intended to reach only statistical studies and that Congress did not intend the IRS to have to delete taxpayer identifications from pure return information relating to individual taxpayers. To give the Haskell amendment the interpretation Cliff urges would nullify much of the effect of section 6103 as it relates to return information, the clear purpose of which was to prohibit dissemination of all the types of such information listed in section 6103(b)(2)(A), *supra* . . . .

> . . . If Congress had intended to impose such a duty, it simply would have defined return information as information revealing a taxpayer's identity, and required the IRS to delete such information from requested documents whenever feasible.

496 F.Supp. at 573–74.

### c. *Cliff and Long Applied*

Plaintiff contends that its data is essentially similar to the data sought in *Long*. It argues that the *Long* data is even more sensitive than the material it seeks, because the *Long* data was taken directly from tax returns, while the engineer's reports and sales data at issue here are independent of the actual returns.

Plaintiff also contends that the *Cliff* interpretation of the Haskell amendment, which distinguished *Long* by reasoning that the data there had been "generated in the production of statistical data," is incorrect.

The data plaintiff seeks here falls in between that in *Cliff* and that in *Long*. Although it is not clear from the opinion, I believe the data in *Long* was amassed in some way before it was placed on the data tapes. In *Cliff* there was a memorandum of a meeting held at the request of a taxpayer, and a memorandum concerning an adjustment of liability based on a revenue proceeding. This comes closer to the sort of material plaintiff in this case requests. The memoranda in *Cliff*, however, were interpretive. The material sought here is more in the nature of data or statistics.

More importantly, however, I think the reasoning of *Cliff* is unpersuasive and overly narrow, given the broad purposes of the FOIA. *Cliff* argues that the use of the word "data" in the amendment demonstrates an intention of narrow interpretation, but the word data is used expansively in § 6103(b)(2)(A)'s definition of return information:

(A) a taxpayer's identity, ... *or any other data*, received by, recorded by, ....

Furthermore, under the *Cliff* interpretation, the Haskell amendment would be severely limited, and the Ninth Circuit in *Long* refused to read the amendment narrowly, because of the liberal purpose of the FOIA. 596 F.2d at 368.

I conclude that the Haskell amendment applies to the data with which we are involved.

3. *Can the Data Be Edited so as to Avoid Identifying, Directly or Indirectly, a Particular Taxpayer?*

An examination of the examples provided by the IRS is necessary.

a. *Defendants' Exhibit W–1A* is the IRS engineer's report prepared to determine the fair market value of plaintiff's timber in calendar years 1971, 1972, and 1973. Plaintiff seeks similar reports prepared on other timber taxpayers in the relevant areas.

Plaintiff contends that by eliminating the name of the timber company from the top of the page, the data sheets will not directly or indirectly identify the taxpayer to which they correspond.

Defendants' expert, Mr. Schrom, testified that even if all references to Willamette Industries were deleted from the exhibit, a knowledgeable person in the timber industry could still identify the taxpayer because of the combination of the tracts of land involved. He conceded that deletion of the volume of timber sold would preclude identification except in one instance.

b. *Exhibit W–1B* contains plaintiff's form T for 1971, and because plaintiff's request did not include form T's, it is not in issue.

c. *Exhibit W–2* is private sales data supplied to the IRS by the plaintiff in the course of an audit, to support its claimed valuations. It qualifies as "return information" under § 6103(b)(2), and defendants contend that it is not the sort of data contemplated by the Haskell amendment and that it cannot be edited to avoid taxpayer identification.

The Haskell amendment specifically allows disclosure of data from return information, if the requirements are met. As with the engineer's reports, these can be rendered non-identifying by deleting the taxpayer's name, the volume of timber sold and the purchaser.

d. *Exhibit W–3* does not include private sales data or IRS valuations. Plaintiff states that it is not relevant here.

e. *Exhibit W–4* contains timber valuations prepared by the IRS, analyzing particular tracts of land. They are work papers preparatory to the engineer's report. Timber subject to tax is compared on a species by species basis with sales of comparable timber, and then adjusted to reflect differences in log quality and the cost of logging the timber. Again, there is no specific argument, either in the briefs or in the transcript of the hearing, as to whether these can be rendered anonymous. Plaintiff contends that they can be made non-identifying by deleting the name at the top of the page.

Plaintiff says that this file demonstrates the methodology of the IRS in evaluating timber harvested.

4. *Would the Data Sought Be Meaningless after the Necessary Material Was Deleted?*

Defendants contend that the editing necessary to make the documents non-identifying would render them meaningless. This is an unsupported assertion, and there is no expert testimony on this point. Plaintiff contends that even with the deletions, the material in W–1A would be meaningful, because it would show the IRS valuations for timber in a particular area of a particu-

lar type, and would allow comparison of those values with those offered by the undisclosed taxpayer.

The government has failed to meet its burden of proof on this issue.

5. *Burden on the IRS in Editing the Material Requested.*

The IRS contends that to comply with the search request and editing requirements of this case, a total of 453,934 pages, in 1343 files, would have to be searched, page by page.

I agree with the IRS that the search and deletions will be somewhat burdensome. However, in *Long*, the Ninth Circuit held that deleting identifying information was not an unreasonable burden. And in *Mead Data Cent., Inc. v. U. S. Department of Air Force*, 566 F.2d 242 (D.C.Cir.1977), the Court said that when the data to be deleted was a small portion of the whole, and was "distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the nonexempt material would indirectly reveal the exempt information." *Id.* at 261.

From the sample data submitted, it seems that the material to be deleted comes in regular and specific places—the top of the page, for example, and some columns of a page. Deleting this material does not reach the level of burdensomeness contemplated by *Mead Data.*

### SUMMARY

All of this data is "return information," as defined in 26 U.S.C. § 6103(b)(2), because it includes "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or ... to the determination of ... liability...."

Although defendants' expert testified that even with deletions, some engineer's reports would be identifying of a particular taxpayer, no detailed explanation was given to support such opinion. Such testimony

does not meet the burden of proof on this issue. With deletions of name and volume, the engineer's reports must be disclosed.

There was no expert testimony on the other documents requested. With deletions of name and volume where appropriate, they must be disclosed.

This opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. Rule 52(a).

Plaintiff will prepare a Judgment.