# Applicability of Executive Privilege to the Recommendations of Independent Agencies Regarding Presidential Approval or Veto of Legislation

In making recommendations to the President to approve or disapprove legislation, an independent agency functions as part of the President's core of executive advisers.

When independent agencies render advice to the President concerning his approval or disapproval of legislation, they are acting in an executive capacity, and such advice can be protected under the doctrine of executive privilege.

December 22, 1986

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
OFFICE OF LEGISLATIVE AFFAIRS

As part of the internal executive branch process for presenting to the President recommendations for approval or disapproval of legislation, the Office of Management and Budget often solicits the views of the "independent agencies" with respect to legislation of particular concern to them. Their recommendations and comments are consolidated by OMB and communicated to the President along with those of the other concerned agencies and departments.

Because existing precedent separates the "independent agencies" somewhat from the President's direct supervision and control, *see, e.g., Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935), the question has arisen as to whether recommendations and comments made by an independent agency in this context, *i.e.*, as advice to the President on his approval or disapproval of legislation, may be protected from disclosure to Congress by the doctrine of executive privilege.

A preliminary question, which does not depend on the status of an agency as "independent," is whether Congress has authority to inquire into approval or veto recommendations made to the President. The Supreme Court has acknowledged that the investigative power of Congress, while broad, is not unlimited. There must be a subject matter for the inquiry, the investigation must be authorized by Congress, there must be a valid legislative purpose, the witness must be accorded certain constitutional protections, and the information demanded must be pertinent to the inquiry. *See Gojack* v. *United States*, 384 U.S. 702, 704–05, 714 (1966); *Wilkinson* v. *United States*, 365 U.S. 399, 408–09 (1961); *Barenblatt* v. *United States*, 360 U.S. 109, 111, 117 (1959);

176

*Watkins* v. *United States*, 354 U.S. 178, 187 (1957); *United States* v. *Rumely*, 345 U.S. 41, 44–46 (1953); *McGrain* v. *Daugherty*, 273 U.S. 135, 173, 176 (1927); *Kilbourn* v. *Thompson*, 103 U.S. 168, 190 (1881). The information sought by Congress must be "demonstrably critical to the responsible fulfillment of the Committee's functions." *Senate Select Committee on Presidential Campaign Activities* v. *Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974) (en banc). Congress may of course appropriately request the views of the Executive Branch on pending legislation, as part of its inquiry into the wisdom of and need for the legislation. However, once that legislation has been passed by Congress, the President alone must determine whether it should be approved. The President's authority to approve or disapprove legislation is absolute, unqualified (except insofar as Congress may override a veto through the legislative process), and unreviewable. Because the veto power is one vested exclusively in the President by the Constitution, it is therefore difficult to see how Congress has any legitimate legislative interest in reviewing the exercise of that power.[1]

Even if Congress can claim a legitimate legislative interest in recommendations made to the President with respect to the approval or disapproval of legislation, it is clear, at least with respect to "nonindependent" Executive Branch agencies, that the doctrine of executive privilege may be invoked to prevent disclosure of those recommendations. In *United States* v. *Nixon*, 418 U.S. 683 (1974), the Supreme Court established in unequivocal terms that the privilege is of constitutional stature. The Court rested this ruling, first, on the need for protection of communications between high government officials and those who assist and advise them, and, second, on the constitutional separation of powers between the three branches:

> Human experience teaches that those who expect public dissemination of their remarks may well temper candor with concern for appearances and for their own interests to the detriment of the decisionmaking process. Whatever the nature of the privilege of confidentiality of Presidential communications in the exercise of Article II powers, the privilege can be said to derive from the supremacy of each branch within its own assigned area

---

[1] In a similar context — that of removal of executive branch officers — the Executive Branch has consistently refused to comply with congressional requests to explore the reasons for dismissal, because under Article II the power to remove Executive Branch officers is exclusively the President's. For example, President Andrew Jackson declined to give the Senate the reasons for dismissal of an executive officer, explaining that "the President in cases of this nature possesses the exclusive power of removal from office, and, under the sanction of his official oath and of his liability to impeachment, he is bound to exercise it whenever the public welfare shall require." 3 J. Richardson, *Messages and Papers of the President* 133 (Gov't Printing Office ed. 1896). President Cleveland similarly rejected "the right of the Senate to sit in judgment upon the exercise of my exclusive discretion and Executive function." 8 J. Richardson, *Messages and Papers of the President* at 381. In the more recent past, General Omar Bradley refused in 1951 to testify before Senate committees concerning his discussions with President Truman regarding the firing of General MacArthur. General Bradley's refusal was upheld by the Senate Committees on Armed Services and Foreign Relations *Military Situation in the Far East: Hearings before the Sen. Comm. on Armed Services and Sen. Comm. on Foreign Relations*, 82d Cong., 1st Sess., Part 2, 832–72 (1951).

of constitutional duties. Certain powers and privileges flow from the nature of enumerated powers; the protection of the confidentiality of Presidential communications has similar constitutional underpinnings.

*Id.* at 705–06. In determining whether to approve or disapprove legislation, the President needs the benefit of full and frank discussions within the Executive Branch of the merits of the legislation. Recommendations made to the President are therefore quintessentially deliberative type materials that can be protected under the doctrine of executive privilege.[2]

The rationale that justifies withholding this type of material under the doctrine of executive privilege is equally applicable to the "independent agencies." In making recommendations to the President to approve or disapprove legislation, an independent agency is functioning as part of the President's core of executive advisers, just as the other departments and agencies. The role played by the various agencies in the process is virtually indistinguishable, regardless of whether the agency is termed "independent" or not. It would be inconsistent with the underlying principle of executive privilege — the need to preserve the integrity of the President's decisionmaking process — to conclude that recommendations made by a Cabinet agency may be protected, whereas recommendations on the same bill, made as part of the same inter-agency process, cannot be protected.

This functional analysis is consistent with the Supreme Court's view in *Humphrey's Executor* of the relationship between the President and the independent agencies. Even assuming, *arguendo*, the continuing validity of *Humphrey's Executor*,[3] it clearly does not divorce entirely the "independent agencies" from the executive branch. Under *Humphrey's Executor*, the President may be limited, in certain questions of removal, from asserting direct supervision and control over the "quasi- legislative" or "quasi-judicial" functions of the agencies. Nothing in the decision suggests, however, that when an agency functions in a clearly executive capacity — such as rendering advice to the President — it is likewise insulated from direct Presidential supervision. A more detailed discussion of this question can be found in a 1957 opinion of this Office. Memorandum for the Attorney General from W. Wilson White, Assistant Attorney General, Office of Legal Counsel (Nov. 5, 1957). That opinion concludes, based on an analysis of *Humphrey's Executor*, that, "[i]n many respects [the] functions and operations [of the independent agencies] are subject to executive control," and "[i]n such cases the doctrine of executive privilege should apply to the independent regulatory commissions to the same extent that it applies to the executive departments and officers of the federal government." A current example of application of this functional analysis is the

---

[2] In order to protect the confidentiality of those recommendations, the privilege would extend as well to drafts and inter- or intra-agency deliberative communications preparatory to making the final recommendation. *See generally NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *Coastal States Gas Corp.* v. *Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

[3] *See generally Bowsher* v. *Synar*, 478 U.S. 714, 761 n.3 (1986).

Executive Order on classification and declassification of sensitive national security information. Executive Order No. 12356, 47 Fed. Reg. 14874 (1982). This order, which is based on the President's supervisory authority over the disclosure of information that may harm the national security — a long-recognized branch of executive privilege — applies equally to "independent agencies" and the other executive agencies.

DOUGLAS W. KMIEC
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
